### 40626. HOUSE v. THE STATE.

Gregory, Justice.

Weyman Harold House, Jr. was convicted of murdering Michael Bradley Turnipseed and sentenced to life imprisonment.

In late summer 1982, the defendant, the victim and Janet Hembree shared an apartment in Cobb County. Just before Christmas 1982, the victim moved out. The evidence is undisputed, however, that he remained friends with both Hembree and the defendant, visiting them frequently.

On the morning of the victim's death the defendant bought a bottle of whiskey for the three to share. By noontime the three had consumed the entire bottle and the defendant retired to his bedroom to sleep. Hembree testified that at midnight the victim came to the back door of the apartment and asked if he could spend the night there as he had no other place to go. Hembree consented. Hembree testified that while she was sorting some clothes the victim went into the defendant's bedroom three times. After his last trip the victim sat

down on the bed in Hembree's bedroom and told her the defendant had "cocked the gun on [him] three times." Minutes later, Hembree testified, she saw the defendant standing in the doorway of her bedroom. No words were exchanged before the defendant raised a handgun and shot the victim several times as he remained seated on Hembree's bed.

The defendant testified that after he and his companions finished the bottle of liquor, he slept for ten or twelve hours. He was awakened, around midnight, by the victim coming into his room. The defendant testified the victim woke him, stating, "I heard you cock the gun. I'm going to take that little twenty-two pistol of yours and stick it up your ass." The defendant testified that he had not cocked his gun. He responded that when the victim was around, "there always seems to be some kind of trouble and I don't like you over here." The defendant then told the victim to leave the apartment. The victim exited the defendant's room.

Shortly thereafter the defendant walked from his bed to the bathroom, putting his gun in his pants pocket. He testified he saw the victim on Hembree's bed and that the victim "jumped up and reached in his pocket and started toward me." The defendant testified he removed the gun from his pocket, aimed it at the victim, and fired five times "at his eyes." The defendant maintained at trial he shot the victim in self-defense.

Medical testimony indicated the victim sustained shots in his head, shoulder and side. The medical examiner testified that the location and angle of the wounds were consistent with other testimony that the victim had been shot from an elevated position.

1. The defendant argues the trial court erred in failing to charge the defense of habitation. The record shows the defendant initially requested this charge, then withdrew his request, stating to the court that he was "not contending the defense of habitation." We find no error.

2. Over a hearsay objection Janet Hembree was permitted to testify that as soon as the victim came out of the defendant's bedroom the third time before the shooting, he stated that the defendant had "cocked the gun three times on [him]." The defendant maintains it was error for the trial court to admit this statement as it was clearly inadmissible hearsay and highly prejudicial to his case.

We hold this statement was admissible under the "spontaneous declaration" exception to the hearsay rule. To satisfy the criteria of this exception, a statement must be made by the out-of-court declarant in response to a startling event. Furthermore, the statement must be a spontaneous reaction to the event rather than the result of "reflective thought." McCormick, *Evidence* 2d, § 297, p.

704 (1972); 6 Wigmore, *Evidence* §§ 1747-1749 (Chadbourn Rev. 1976). It is thought that a statement spontaneously made under the influence of startling circumstances has a "special trustworthiness" which justifies exempting it from the rule against hearsay. 6 Wigmore § 1749.

It cannot be questioned that the victim's statement, "[The defendant] cocked the gun on me three times," was made in response to a startling event. Additionally, Janet Hembree testified the victim exited the defendant's room the third time, walked into her room and made the challenged statement. We find this evidence satisfies the requirement that the statement be spontaneously made without reflective thought. The trial court did not err in admitting Hembree's testimony.

3. (a) The defendant complains the trial court's charge on intent violates Sandstrom v. Montana, 442 U. S. 510 (99 SC 2450, 61 LE2d 39) (1979), in creating a mandatory presumption and in shifting the burden of persuasion to the defendant.

The trial court initially instructed the jury that intent, an essential element of the crime, must be proved beyond a reasonable doubt by the State. The trial court also charged "a person will not be presumed to act with criminal intent, but . . . the jury may find such intention or the absence thereof upon a consideration of words, conduct, demeanor, motive and other circumstances connected with the act for which the accused is being prosecuted." Defendant's complaint lies with the trial court's charge, "Now, if you find that a homicide is proved to have been committed in this case by the defendant and with a weapon that you find was, in the manner in which it was used upon the occasion in question, a weapon likely to produce death, the law would presume malice and the intent to kill, but that presumption may be rebutted, that is, it is subject to being overcome by evidence to the contrary."

We find a reasonable juror would not have interpreted this instruction to create a mandatory presumption[1] as the trial court clearly charged the presumption could be overcome by evidence to the contrary. *Hosch v. State,* 246 Ga. 417 (271 SE2d 817) (1980). See also, *Johnson v. State,* 249 Ga. 621 (292 SE2d 696) (1982). Nor do we find that the challenged instruction on intent impermissibly shifted the burden of persuasion to the defendant on this issue. The trial

---

[1] A mandatory instruction " 'tells the trier [of fact] that he or they *must* find the (ultimate) fact upon proof of the basic fact.' " *Williamson v. State,* 248 Ga. 47, 54 (281 SE2d 512) (1981); Ulster County, New York v. Allen, 442 U. S. 140, 157 (99 SC 2213, 60 LE2d 777) (1979).

court clearly instructed the jury that the State had the burden of proving intent beyond a reasonable doubt, as well as charging that a person is not presumed to act with criminal intent, but that intent is a jury question. Given these instructions in addition to the trial court's charges on the defendant's presumption of innocence and the State's overall burden of proof, we find the jury could not have interpreted this charge as shifting the burden of persuasion to the defendant. 246 Ga. at 420.[2]

(b) The defendant also complains the trial court erred in charging, "And I charge you that an assault is an attempt to commit a violent injury on the person of another. To constitute an assault, no actual injury need be shown, it being only necessary to show an intention to commit an injury, coupled with an apparent ability to do so."

The record shows that this precise language was taken from defendant's "request to charge number one" which the trial court charged in its entirety. He cannot now complain the trial court erred in giving this charge.

(c) The trial court charged "that malice may be inferred from circumstances which demonstrate a reckless disregard for human life." Defendant argues this charge shifted the burden of persuasion to him to disprove malice. We do not think a reasonable juror would have construed this instruction to place any burden on the defendant in light of the trial court's entire charge. We find no error.

4. The trial court charged with regard to the criminal responsibility of one under the influence of alcohol, drugs or narcotics. The defendant objects to this charge, arguing there was no competent evidence to show the use of alcohol or drugs.

The defendant testified at trial that he, the victim and Janet Hembree drank a bottle of bourbon, containing 750 milliliters, over the course of two hours. The defendant admitted that Hembree consumed very little of the alcohol and that he and the victim consumed the liquor "in about the same proportions." Janet Hembree testified that while they were drinking the defendant took

---

[2] While, under the circumstances of this case we find the trial court's charge on intent did not violate the proscriptions of Sandstrom v. Montana, supra, we point out that in *Hosch v. State,* 246 Ga. 417, 420 (271 SE2d 817) (1980), we disapproved the continued use of a similar charge and urged the usage of the following charge:

"I charge you that you may infer that a person of sound mind and discretion intends to accomplish the natural and probable consequences of his intentional acts, and if a person of sound mind and discretion and without justification uses a deadly weapon or instrumentality in the manner in which such weapon or instrumentality is ordinarily used and thereby causes the death of a human being, you may infer the intent to kill." See, *Trenor v. State,* 252 Ga. 264 (313 SE2d 482) (1984).

some of the phenobarbital she administered to her son to treat his epilepsy. The defendant testified he could not remember taking this drug on the day in question, but admitted he had taken it before.

We hold this testimony is evidence sufficient to authorize the complained-of charge.

5. Throughout the trial the defendant was permitted to show the victim's general reputation for violence. The defendant also testified to specific acts of violence perpetrated on him by the victim. The defendant complains, however, that he was not permitted to ask three witnesses about specific acts of violence the victim allegedly committed against them. The defendant argues evidence of specific acts of violence against third parties of which the defendant had knowledge would have corroborated other testimony indicating the victim had a reputation for wielding a knife and would have bolstered his defense that he shot the victim out of a justifiable fear he was about to be attacked.

Generally the character of the victim in a murder trial is inadmissible. *Henderson v. State,* 234 Ga. 827 (218 SE2d 612) (1975). Where there has been a prima facie showing that the victim was the assailant, and, in fact, assailed the defendant, and that the defendant retaliated in an honest effort to defend himself, the general reputation of the victim for violence may be shown.[3] The defendant is also entitled to show prior specific acts of violence by the deceased against the defendant. *Williams v. State,* 249 Ga. 6 (287 SE2d 31) (1982); *Milton v. State,* 245 Ga. 20 (262 SE2d 789) (1980); *Maynor v. State,* 241 Ga. 315 (245 SE2d 268) (1978). However, the defendant may not prove the victim's specific acts of violence against third parties. *Music v. State,* 244 Ga. 832 (262 SE2d 128) (1979); *Smith v. State,* 247 Ga. 453 (276 SE2d 633) (1981). We find no error.

*Judgment affirmed. All the Justices concur.*

DECIDED APRIL 4, 1984.

*Jimmy D. Berry,* for appellant.
*Thomas J. Charron, District Attorney, James F. Morris, Debra Halpern Bernes, Assistant District Attorneys, Michael J. Bowers,*

---

[3] With regard to one of these witnesses the defendant had not even made out the prima facie case which would have permitted him to inquire into the victim's general reputation for violence at the time he sought to elicit testimony concerning specific acts. The defendant was nonetheless able to elicit testimony from this witness of the victim's past violent behavior toward her. The defendant was permitted to ask the other two witnesses about the victim's reputation for violence in the community.

*Attorney General, Eddie Snelling, Jr.,* for appellee.