## 43026. WHITE v. THE STATE.
(342 SE2d 304)

Weltner, Justice.

Thomas White, Sr. was convicted and sentenced to life imprisonment for the murder of Eddie Lee Moss by shooting him with a handgun.[1]

The jury heard evidence from which it could have determined that White went to Moss' home to purchase bottles of whiskey; that they drank and talked and, when the victim demanded payment, White contended that he already had paid; that they argued then scuffled, and the victim pulled a knife and cut White; that White drew his knife, whereupon the victim's daughter entered the affray by knocking White's knife from his hand with a broom handle; that White backed out the front door of the house onto the porch, drew his pistol, and announced to the victim, "I'm going to shoot you." He then fired through the partially-closed door, which Moss was closing. The jury heard expert testimony concerning gunpowder residues on the outside of the door, the angle of entry of the pistol bullets and testimony that one of the bullets struck the victim and was the cause of his death.

1. The evidence was sufficient to sustain the conviction. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. White contends that the circumstances of his case and the instructions given by the court to his jury are in all respects identical to those of *Francis v. Franklin,* 471 U. S. ___ (105 SC 1965, 85 LE2d 344) (1985).

(a) White's jury was instructed, in part: "I also charge you that

---

[1] The homicide occurred on November 19, 1984. White was indicted on January 15, 1985. The verdict of the trial jury was returned and White was sentenced to life imprisonment on February 27, 1985. He moved for a new trial on March 29, 1985. His motion for new trial was denied on October 22, 1985. The trial transcript was certified by the reporter on September 4, 1985. Notice of Appeal was filed on November 18, 1985. The appeal was docketed in this court on December 19, 1985, and argued on February 11, 1986.

the acts of a person of sound mind and discretion are presumed to be the product of the person's will, but this presumption may be rebutted. A person of sound mind and discretion is presumed to intend the natural and probable consequence of his voluntary acts, but this presumption may be rebutted. A person will not be presumed to act with criminal intention but the jury may find such intention upon consideration of the words, conduct, demeanor or motive and all other circumstances connected with the act for which the defendant is being prosecuted." The jury was charged in substantially the same language in *Franklin*. 105 SC at 1969-70.

(b) The question presented is whether this error is harmless in this case. "This Court has not resolved whether an erroneous charge that shifts a burden of persuasion to the defendant on an essential element of an offense can ever be harmless. See *Connecticut v. Johnson*, 460 U. S. 73, 103 S.Ct. 969, 74 LE2d 823 (1983). We need not resolve the question in this case." 105 SC at 1977. That the deficiency in White's case and in *Franklin* are identical is beyond quarrel. 105 SC at 1972-73. "A mandatory rebuttable presumption is perhaps less onerous from the defendant's perspective, but is no less unconstitutional." 105 SC at 1973. The instruction that criminal intention will not be presumed (the third sentence quoted) is not effective to cure the defect found by the Supreme Court of the United States in the first two sentences quoted. "Language that merely contradicts and does not explain a constitutionally infirm instruction will not suffice to absolve the infirmity." 105 SC at 1975.

(c) The next inquiry, thus, must be whether the facts of White's case are different from those in *Franklin*, and whether White's case presents one of those "rare situations in which the reviewing court can be confident that a *Sandstrom* error did not play any role in the jury's verdict." 460 U. S. at 87. Among the categories of such situations the court listed a case in which "the defendant conceded the issue of intent." 460 U. S. at 87. "In presenting a defense such as alibi, insanity, or *self-defense*, a defendant may in some cases admit that the act alleged by the prosecution was intentional, thereby sufficiently reducing the likelihood that the jury applied the erroneous instruction as to permit the appellate court to consider the error harmless. See Traynor 73. We leave it to the lower courts to determine whether, by raising a particular defense or by his other actions, a defendant himself has taken the issue of intent away from the jury." (Emphasis supplied.) 460 U. S. at 87. By footnote, the court remarked: "We note that a defendant in a criminal trial is justified, of course, in defending solely in reliance on the presumption of his innocence and the state's burden of proof." 460 U. S. at 87.

It is clear, here, that the jury heard evidence from which a reasonable juror might have concluded that White intended to shoot

Moss, although (according to White's version) White intentionally shot Moss defending himself from a second knife attack by Moss. The jury heard evidence that before White fired the shots, including the fatal round, he exclaimed to Moss: "I'm going to shoot you." In support of his self-defense argument, White testified that after Moss' daughter struck White's knife from his hand using the broomstick, he (White) left the house through the front door, bleeding profusely from facial cuts caused by Moss' slashing him with the knife; that the blood obscured his vision, causing him to fall down on the porch; and it obscured his vision as he fired his handgun to protect himself from Moss' supposed second knife assault. The jury chose not to believe White's version of the events — perhaps because the jury decided that White's testimony did not account adequately for the bullet holes and powder residues found on the door.

White's defense was self-defense, whereas Franklin's was accident. These are, of course, two different things. *Gladson v. State*, 253 Ga. 489, 491 (1) (322 SE2d 45) (1984). " 'When a person claims to be acting in self-defense . . . the defense of accidental killing is not involved.' " *Boling v. State*, 244 Ga. 825, 829 (9) (262 SE2d 123) (1979). "The defenses of self-defense and justification do not deny the intent to inflict injury, but claim authority for the act under the legal excuse of reasonable fear of immediate serious harm to oneself or another." *Fields v. State*, 167 Ga. App. 816, 818 (307 SE2d 712) (1983).

In these circumstances, we conclude that White's case presents one of those "rare situations in which the reviewing court can be confident that a *Sandstrom* error did not play any role in the jury's verdict." 460 U. S. at 87. The deficiency in question was harmless. *Williams v. Kemp*, 255 Ga. 380 (338 SE2d 669) (1986).

3. White next contends that the court's instruction to the jury that "Malice shall be implied when no considerable provocation appears and where all the circumstances of the killing show an abandoned and malignant heart" is also constitutionally infirm under *Franklin*. We previously have reviewed and approved this instruction. *Jones v. Francis*, 252 Ga. 60, 63-64 (312 SE2d 300) (1984). See also *Jarrell v. Balkcom*, 735 F2d 1242, 1256 (11th Cir. 1984). We must view the rule in *Franklin* as an effort to effect a constitutionally-required result, and not as a commandment of perfection in the use of the English language.

There was no error.

4. White next contends that the court's instruction that "if there should have been an interval between the provocation and the killing sufficient for the voice of reason and humanity to be heard, of which the jury in all cases shall be the judges, the killing shall be attributed to deliberate revenge and punished as murder" similarly was infected with constitutional error. We disagree, as we do not believe that the

Supreme Court of the United States has forbidden use of the word "shall" during jury instructions in criminal cases. The quoted words did not "relieve the State of the burden of persuasion on an element of an offense." 105 SC at 1971. The court charged the jury that "In Georgia every person is presumed innocent until proved guilty. No person in this State shall be convicted of a crime unless each element of such crime is proved beyond a reasonable doubt. The law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence. The burden of proof rests upon the State to prove each element of the offense charged beyond a reasonable doubt." The court further defined the term reasonable doubt, and instructed the jury as to how it should apply the doctrine of reasonable doubt. *Nothing* in the quoted words to which White objected or elsewhere in the court's instructions could be perceived by a reasonable juror as contradicting the court's instructions regarding the continuing burden upon the state to go forward with evidence and to persuade the jury beyond a reasonable doubt, and the total want of an obligation upon the defendant to do either. 105 SC at 1975. We find no error.

5. We find no error in the court's instructions respecting the contentions of the parties, the definitions of justification and provocation, the elements of the offenses of murder and manslaughter, or in the charge as a whole.

*Judgment affirmed. All the Justices concur, except Gregory and Bell, JJ., who dissent, and Hunt, J., not participating.*

GREGORY, Justice, dissenting.

I respectfully dissent because I am unable to agree with the conclusion of the majority that the *Sandstrom* error was harmless. I believe there could be a case in which such an error would be harmless because the defendant admitted an intention to kill the victim, then sought to justify or excuse the act. The facts of this case fall one step short of that hypothetical. This defendant did not admit an intent to kill, thus leaving the state of his mind an issue to be resolved by the jury.

OCGA § 16-3-21 (a) provides: "A person is justified in threatening or using force against another when and to the extent that he reasonably believes that such threat or force is necessary to defend himself or a third person against such other's imminent use of unlawful force; however, a person is justified in using force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent death or great bodily injury to himself or a third person or to prevent the commission of a forcible felony." White testified he had been cut by the victim several times when he fell down on the porch. As he lay there

with blood running down his face obscuring his vision, pistol in hand, he thought it was necessary to shoot to protect his own life. One may shoot a pistol with the intention to wound, frighten or kill another. Under White's version of the facts he was justified in shooting with the intention to accomplish any of these three objects. Furthermore, one might shoot a pistol under circumstances described by White without specific intent. White's testimony failed to state his intention. So, as I see it, intent was a factual question for jury determination and an essential element of the charge of murder which the State was bound to prove beyond a reasonable doubt. To hold that White's intent to kill was established by his claim of self-defense under these facts is to presume by his act of shooting that he intended to kill, the very essence of the *Sandstrom* error itself.

I am authorized to state that Justice Bell joins in this dissent.

DECIDED APRIL 23, 1986 —
RECONSIDERATION DENIED MAY 13, 1986.

*Samuel A. Hilbun, Robert L. Doyel,* for appellant.

*Beverly B. Hayes, Jr., District Attorney, Michael J. Bowers, Attorney General, Dennis R. Dunn, Staff Assistant Attorney General,* for appellee.