**Weyman H. HOUSE, Jr.,**
**Petitioner–Appellant,**

v.

**Bob L. LAVOIE, Warden, Dodge County Correctional Institute,**
**Respondent–Appellee.**

No. 86–8754.

United States Court of Appeals,
Eleventh Circuit.

April 27, 1988.

Bruce S. Harvey, Harvey & Jarnagin, Atlanta, Ga., for petitioner-appellant.

Susan V. Boleyn, State Law Dept., Atlanta, Ga., for respondent-appellee.

Before RONEY, Chief Judge,
ANDERSON and EDMONDSON,
Circuit Judges.

PER CURIAM:

Weyman H. ("Bunky") House, Jr. was convicted of murdering Michael Bradley Turnipseed in Georgia and sentenced to life imprisonment. The sole issue on appeal from a denial of federal habeas corpus relief is whether the state trial court's instruction to the jury shifted the burden of persuasion to the defendant on malice and intent, in violation of *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).[1] Although the Georgia Supreme Court held there was no *Sandstrom* violation, reading the charge as a whole,[2] there is a substantial argument to the contrary. The district court held it was unnecessary to decide whether the challenged instruction was "burden-shifting" because even if so, it would be was harmless error under *Rose v. Clark,* 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986). We affirm.

Although the issue had been in doubt, the Supreme Court in *Rose v. Clark* clearly instructed the court in reviewing a *Sandstrom* error to apply *Chapman v. California,*[3] and not set aside an otherwise valid conviction "if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt."[4] In a case such as this, the full record is examined to see if the evidence is so dispositive of intent that a reviewing court can say beyond a reasonable doubt that " 'the jury would have found it unnecessary to rely on the presumption.' "[5]

There is no problem in reaching that conclusion in this case. The defense against the murder charge at trial was self-defense. The defendant admittedly intended to shoot the victim, fired five shots at him at close range, and hit the victim in his head, shoulder and side. Although the defendant testified he did not intend to kill the victim, he did intend to stop him.[6] He fired four quick shots, and then, because he thought he had missed, fired a fifth shot. He started to run but then saw the victim fall. He repeatedly told the jury that he was acting in self-defense.[7]

---

1. The petition to the district court raised four additional allegations which are not the subject of appeal:
   whether the applicant was denied due process and a fair trial by
   1. the introduction of prejudicial evidence (grounds (a), (b));
   2. restrictions on his right to cross-examine state's witness Hembree (ground (e)); and
   3. the Court's refusal to permit him to introduce evidence regarding the victim's character (ground (c)).
   Magistrate's Report & Recommendation at 2, *House v. Lavoie* (No. C86–591A).

2. *House v. State,* 252 Ga. 409, 314 S.E.2d 195 (1984).

3. 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, 24 A.L.R.3d 1065 (1967).

4. *Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (citations omitted).

5. *Rose v. Clark,* 478 U.S. 570, ——, 106 S.Ct. 3101, 3105, 92 L.Ed.2d 460, 469 (quoting *Connecticut*

*v. Johnson,* 460 U.S. 73, 97 n. 5, 103 S.Ct. 969, 983, n. 5, 74 L.Ed.2d 823 (Powell, J. dissenting)).

6. On questioning by defendant's attorney on direct examination:
   Q. [By Mr. Pearlberg] When you first fired the gun, was it your intent to kill Mike Turnipseed?
   A. No, sir.
   Q. What were you intending to do?
   A. To stop him.
   Q. And why were you intending to stop him?
   A. To defend myself.
   Record at 277, *State v. House* (Indictment No. 83–0478).

7. Q. Bunky, do you regret what happened?
   A. Yes, sir.
   Q. Are you sorry for what happened?
   A. Yes, sir, I am, but there's not anything I can do about it.
   Q. Can you tell us—If you regret it and you're sorry for what occurred, can you tell us, in your opinion, why it happened, then?
   A. Yes, sir. I was acting in self defense.
   MR. PEARLBERG: He's with you.
   *       *       *       *       *       *

From this evidence, it is clear beyond a reasonable doubt that once the jury resolved the contested issue of self-defense against the defendant, the jury would have found it unnecessary to rely on the erroneous presumption in deciding the issues of intent and malice.

This controlling evidence occurred at the end of this scenario: Defendant, "Bunky" House, and the victim, Mike Turnipseed, had been friends since childhood, and had occasionally lived together since the victim's discharge from the Marine Corps. On the latest occasion, the two friends lived together with Janet Hembree and her two young sons.

In November, 1982, Mike was evicted from their joint apartment by the landlord, apparently for "fussing and fighting." He returned surreptitiously on a regular basis, including January 12, the day he was killed. On that day Janet and the defendant had bought a bottle of liquor and returned to the apartment where they were joined by Mike. After having drunk the entire bottle together, the defendant went to sleep in his bedroom while Janet and Mike left to visit friends, returning about midnight.

Janet testified that as she returned to her bedroom to pack a suitcase for a stay in the hospital, Mike entered the defendant's room on three occasions. Leaving defendant's room and sitting on her bed, Mike told Janet that the defendant had just cocked his pistol at him. A few seconds later, the defendant was standing in the doorway. Without comment, he aimed the pistol with both hands and shot the victim who was still sitting on the bed. Janet testified that the first shot struck the victim in the side. Frightened, she ran from the room and heard the remaining shots as she fled the scene and went for help.

Defendant's account varies only slightly from this account. He stated that shortly before the shooting Mike had come into his room and harassed him while he lay in bed recovering from their drinking binge earlier in the day. He recounted how Mike

inexplicably accused him of pulling back the hammer of the gun the defendant was known to keep under his pillow. Whereupon, the victim was to have said, "You can let it down. I'm not going to jump on you or nothing." Still lying in bed, he and Mike had a heated conversation.

Soon afterwards, defendant got up to go to the bathroom and placed the pistol in the back pocket of the pants he was still wearing. When he emerged, defendant saw Mike sitting on the bed in the next room. No words were exchanged, but the victim according to defendant "jumped up and reached in his pocket and started toward me." Defendant fired four shots in rapid succession, and after a brief period, one last shot.

Because defendant relied upon a theory of self-defense to justify his acts he did not contest his intent to shoot the victim. In his own words, "I was looking straight at him. I reached in my pocket and got out the gun and fired." At a distance of less than a dozen feet he fired the gun until he could fire it no more. While defendant testified that until the victim fell over he was unsure he had even hit him, only one shot went awry, three hit the victim in the chest or side, and one in the head. While he thought the victim was going to tackle him, according to defendant's own testimony, the victim never advanced more than one step toward him, and after the fifth shot, fell over on the same bed he had been sitting on when the incident began.

Asked why he had fired more than once, defendant explained that he was never sure he had hit the victim. Asked then why he fired the fifth time, defendant responded that the victim "stood back up, ... and I didn't think I'd even slowed him, you know, even hit him, and I fired—I only had one shot left, and I fired the last time."

By pleading self-defense, House put before the jury the credibility of his account of the threat he felt and the reasonableness of his reaction to it. Once the jury rejected the credibility of the self-defense theory, a

Q. Okay. Before you shot Mike, you're not telling this jury there was any kind of scuffle between the two of you?

A. Mike had just threatened me.
*Id.* at 306, 310.

theory that hinged almost totally on defendant's own testimony, the case fell squarely within the Supreme Court's characterization that:

> In many cases, the predicate facts conclusively establish intent, so that no rational jury could find that the defendant committed the relevant criminal act but did not intend to cause injury.

*Rose v. Clark*, 478 U.S. at ——, 106 S.Ct. at 3108, 92 L.Ed.2d at 472 (citing *Lamb v. Jernigan*, 683 F.2d 1332, 1342–43 (11th Cir. 1982), *cert. denied*, 460 U.S. 1024, 103 S.Ct. 1276, 75 L.Ed.2d 496 (1983)).

Left with the opinion that the erroneous instruction was harmless beyond a reasonable doubt, the district court correctly denied habeas corpus relief on the *Sandstrom* issue.

AFFIRMED.

ANDERSON, Circuit Judge, dissenting:

I respectfully dissent. The opinion for the court suggests, without conceding, that the trial court's instruction on malice unconstitutionally shifted the burden of proof to the defendant.[1] Majority at 475. The court then concludes that any error in this regard was harmless. Specifically, the court holds that "it is clear beyond a reasonable doubt that once the jury resolved the contested issue of self-defense against the defendant, the jury would have found it unnecessary to rely on the erroneous presumption in deciding the issues of intent and malice." Majority at 476.

At the outset, I note that the instruction clearly violates the dictates of *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) and *Francis v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985). It directs the jury to presume malice, an essential element of the crime, when certain facts are proved, even though all essential elements of malice may not have been proved beyond a reasonable doubt. The presumptive language is nearly identical to that condemned in *Sandstrom* and *Francis*.

I am, however, mindful that the charge must be examined as a whole. *Francis*, 105 S.Ct. at 1971. Nonetheless, I see nothing in this charge which cures the erroneous language. In *Francis*, the Supreme Court specifically rejected the idea that if the presumption were rebuttable the instruction would be saved. *Id.* at 1972. It also rejected the idea that general instructions to the effect that the State must prove every element of the crime beyond a reasonable doubt would cure the presumptive language. *Id.* at 1973–77. "Language that merely contradicts and does not explain a constitutionally infirm instruction will not suffice to absolve the infirmity." *Id.* at 1975. At most, this charge contains language that contradicts, but does not specifically explain, the erroneous instruction.[2]

---

1. The challenged instruction was:

    Now, if you find that a homicide is proved to have been committed in this case by the defendant and with a weapon that you find was, in the manner in which it was used upon the occasion in question, a weapon likely to produce death, the law would presume malice and the intent to kill, but that presumption may be rebutted, that is, it is subject to being overcome by evidence to the contrary.

    Transcript at 403–04.

2. The majority correctly notes that the Georgia Supreme Court found that the instruction did not violate *Sandstrom*. Majority at 475; *House v. State*, 252 Ga. 409, 314 S.E.2d 195 (1984). However, since the issue of how a reasonable juror might have interpreted the instruction is one of federal due process law, this finding is not binding on us. *See Sandstrom*, 442 U.S. at 516–17, 99 S.Ct. at 2455.

Nor does the Georgia Supreme Court's decision in *White v. State*, 255 Ga. 731, 342 S.E.2d 304 (1986), change the analysis. *White* was a self-defense case, but the issue was whether the defendant intended to shoot at all. The Georgia Supreme Court apparently found that by pleading self-defense, the defendant conceded the issue of intent to shoot. Here the issue is not whether the defendant intended to shoot—that much is conceded. Rather the issue is whether the defendant intended to kill when he shot and whether there were mitigating circumstances sufficient to negate malice. *See Mason v. Balkcom*, 669 F.2d 222, 227 (5th Cir. Unit B 1982) (plea of self-defense does not necessarily concede intent to kill), *cert. denied*, 460 U.S. 1016, 103 S.Ct. 1260, 75 L.Ed.2d 487 (1983). *Mason* was decided after the close of business on September 30, 1981 and is binding precedent under *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir.1982).

Even though an instruction is constitutionally erroneous, it may still be harmless beyond a reasonable doubt. *Rose v. Clark,* 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986). "In applying harmless error analysis to *Sandstrom* violations, this Court has identified two situations where the harmless error doctrine can be invoked: (1) where the erroneous instruction was applied to an element of the crime that was not at issue in the trial, or (2) where the evidence as to defendant's guilt was overwhelming. [citations omitted]" *Bowen v. Kemp* and *Dix v. Kemp,* 832 F.2d 546, 548 (11th Cir.1987) (en banc), *cert. denied,* — U.S. ——, 108 S.Ct. 1120, 99 L.Ed.2d 281 (1988) (one opinion deciding two cases; hereinafter referred to as *Bowen/Dix* ). *See also Corn v. Kemp,* 837 F.2d 1474 (11th Cir.1988).

The opinion for the court assumes that the jury's rejection of the self-defense theory necessarily leads to a finding of malice. Respectfully, I suggest that the opinion for the court is inconsistent with the rationale of *Bowen/Dix.* In *Bowen/Dix,* we held that a defendant does not concede intent by raising an insanity defense. Although the jury rejected the insanity defense in both *Bowen* and *Dix,* the en banc court held that there remained before each jury the issue of the capacity of the defendant to formulate intent. The court held that this remaining capacity issue was not coincidental with the insanity issue. 832 F.2d at 549–50. Applying the same principle in this case, I would hold that, after the jury's rejection of House's self-defense theory, there remained before the jury a live issue as to whether all the circumstances combined "in any degree [to] mitigate" the homicide, which according to the jury instruction would negate malice.[3]

I believe that a reasonable juror could have rejected the self-defense theory, but still have found that there were mitigating circumstances which negated the element of malice. With respect to self-defense, the trial judge instructed the jury as follows:

> Now, in regard to self defense, I charge you that the laws of this state provide that a person is justified in threatening or using force against another when and to the extent that he reasonably believes that such threat or force is necessary to defend himself or a third person against such other's imminent use of unlawful force. However, a person is justified in using force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent death or great bodily injury to himself or a third person or the commission of a forcible felony.

Transcript at 406–07.[4]

A reasonable juror might have found that the defendant sincerely believed that he needed to use force to defend himself, but that this belief was not reasonable. A reasonable juror might also have found that the defendant reasonably believed that he needed to use force to defend himself, but that the belief that he needed to use deadly force was not reasonable. In either circumstance, the juror would have been obligated to reject the self-defense theory.

Although the juror would have had to reject self-defense, he still might have found these circumstances sufficiently mitigating to negate malice. Having reached this conclusion, the juror would face the instruction that the law presumes that one who uses a deadly weapon in committing a homicide has acted with malice. Thus, he might have relied upon the presumption of malice, rather than requiring the State to prove malice beyond a reasonable doubt.

In short, I do not believe that in the circumstances of this case the jury's rejec-

---

**3.** The trial judge instructed the jury on malice in part as follows:

> I charge you that in the legal sense malice means an intent to kill a human being in a case where the law would neither justify *nor in any degree mitigate* or excuse the homicide if the killing takes place as intended.

Transcript at 402 (emphasis added). The State has not challenged this instruction, and it is supported by Georgia case law. *See, e.g., Fox v. State,* 238 Ga. 387, 233 S.E.2d 341 (1977).

**4.** This appears to be an accurate statement of Georgia law. O.C.G.A. § 16–3–21 (1984).

tion of self-defense necessarily implied a finding of malice thereby obviating any reliance on the erroneous instruction. Malice remained a live issue even after the rejection of self-defense. Thus, I cannot find that the *Sandstrom* error was harmless under the first prong of the *Bowen/Dix* test.

The second prong of the *Bowen/Dix* test requires little discussion. I agree that the evidence that the defendant intended to fire the gun is overwhelming. The defendant admitted this. However, the issue of whether he intended to kill the victim and the issue of whether there may have been sufficient mitigating circumstances to negate malice were hotly contested.

The defense presented evidence which, if believed, tended to show the following facts. The victim had a reputation for violence. The victim had a knife, and the defendant knew it. Shortly before the shooting, the victim entered the defendant's bedroom and without any provocation threatened the defendant. Minutes later when the defendant was returning from the bathroom, the victim again without any provocation approached the defendant while reaching into the pocket where he kept the knife. Finally, the defendant testified that he shot to stop the victim and not to kill him. For these reasons, I do not believe that the evidence as to either intent to kill or lack of mitigation was overwhelming. Thus, I cannot find that the *Sandstrom* error was harmless under the second prong of the *Bowen/Dix* test either.

I believe the trial court committed a *Sandstrom* error that was not harmless beyond a reasonable doubt. I would reverse the judgment of the district court and remand with instructions to issue the writ unless the State retried the defendant within a reasonable time.