Rehearing en banc granted by order filed 9/23/97.
Published opinion filed 7/29/97 is vacated.

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

_____

Nos. 96-12(L)
(CA-84-2135-6-2AK, et al)
_____

Larry Gilbert, et al,

Petitioners - Appellees,

versus

Michael W. Moore, etc., et al,

Respondents - Appellants.

_____

O R D E R

_____

The Court amends its opinion filed July 29, 1997, as follows:

On page 2, section 3, line 2 -- the district court is changed from "at Columbia" to "at Greenville."

On page 2, section 3, line 4 -- the district court numbers are corrected to read "CA-84-2135-6-2AK" and "CA-84-2792-6-2AK."

On page 3, section 2, line 5 -- "John Henry Blume, III, Columbia, South Carolina," is added to correct the "argued" counsel information for appellees.

On page 3, section 2, line 11 -- "David P. Voisin, Hilary Sheard, CENTER FOR CAPITAL LITIGATION, Columbia, South Carolina" is added to correct the "on brief" counsel information for appellees.

For the Court - By Direction


/s/ Patricia S. Connor
_____
Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

LARRY GILBERT,
Petitioner-Appellee,

v.

MICHAEL W. MOORE, Director of the

South Carolina Department of
Corrections, in his official capacity;
ATTORNEY GENERAL OF THE STATE OF
SOUTH CAROLINA,
Respondents-Appellants.

No. 96-12

J. D. GLEATON,
Petitioner-Appellee,

v.

MICHAEL W. MOORE, Director of the

South Carolina Department of
Corrections, in his official capacity;
ATTORNEY GENERAL OF THE STATE OF
SOUTH CAROLINA,
Respondents-Appellants.

No. 96-13

LARRY GILBERT,
Petitioner-Appellant,

v.

MICHAEL W. MOORE, Director of the

No. 96-15

South Carolina Department of
Corrections, in his official capacity;
ATTORNEY GENERAL OF THE STATE OF
SOUTH CAROLINA,
Respondents-Appellees.


J. D. GLEATON,
Petitioner-Appellant,

v.

MICHAEL W. MOORE, Director of the

No. 96-16

South Carolina Department of
Corrections, in his official capacity;
ATTORNEY GENERAL OF THE STATE OF
SOUTH CAROLINA,
Respondents-Appellees.


Appeals from the United States District Court
for the District of South Carolina, at Greenville.
C. Weston Houck, Chief District Judge.
(CA-84-2135-6-2AK, CA-84-2792-6-2AK)

Argued: March 5, 1997

Decided: July 29, 1997

Before RUSSELL, MURNAGHAN, and MOTZ, Circuit Judges.

_____

2

Affirmed by published opinion. Judge Russell wrote the opinion, in which Judge Murnaghan and Judge Motz joined.

_____

**COUNSEL**

**ARGUED:** Charles Molony Condon, Attorney General, Robert F. Daley, Jr., Assistant Attorney General, Columbia, South Carolina, for Appellants. Vance L. Cowden, Department of Clinical Legal Studies, UNIVERSITY OF SOUTH CAROLINA SCHOOL OF LAW, Columbia, South Carolina; John Henry Blume, III, Columbia, South Carolina, for Appellees. **ON BRIEF:** John W. McIntosh, Deputy Attorney General, Donald J. Zelenka, Assistant Deputy Attorney General, Columbia, South Carolina, for Appellants. William Lewis Burke, Jr., Department of Clinical Legal Studies, UNIVERSITY OF SOUTH CAROLINA SCHOOL OF LAW, Columbia, South Carolina; David P. Voisin, Hilary Sheard, CENTER FOR CAPITAL LITIGATION, Columbia, South Carolina, for Appellees.

_____

**OPINION**

RUSSELL, Circuit Judge:

The Director of the South Carolina Department of Corrections, in his official capacity, and the Attorney General of the State of South Carolina (collectively "the State"), appeal the district court's final order granting Larry Gilbert's and J.D. Gleaton's individual petitions for writs of habeas corpus. Although we heard oral argument on the appeals and cross-appeals in <u>seriatim</u>, we consolidate both cases into this single opinion.

I.

On Tuesday afternoon, July 12, 1977, half-brothers Gilbert and Gleaton drove around Cayce, South Carolina intending to purchase drugs. After several unsuccessful inquiries in Cayce, they drove toward South Congaree. As they traveled along Highway 51, they noticed a lone attendant, Ralph Stoudemire, in a service station, and decided to rob him. Gleaton entered the station first. After requesting some cigarettes, he pulled out a hunting knife, and told Stoudemire

3

that it was a robbery. As Stoudemire reached into his pocket, Gleaton made a stabbing motion at Stoudemire, and a scuffle ensued. Gleaton inflicted Stoudemire with slash and stab wounds to his torso and wrists. During the scuffle, Gilbert entered the station with a gun and shot Stoudemire once. Gilbert and Gleaton then ran out of the station. On his way out, Gilbert grabbed a nearby pocketbook left in the station by Stoudemire's wife. From across the street, Stoudemire's son witnessed the men drive off and saw his father stagger out of the service station pointing at the car. Stoudemire died approximately forty-five minutes later.

The police arrested Gilbert and Gleaton the next day. While the men were in police custody, each man admitted to driving around looking for a business to rob so they would have money with which to purchase drugs. Gilbert confessed to shooting Stoudemire with the gun. Gleaton confessed to assaulting Stoudemire with the knife.

An autopsy established that Gilbert and Gleaton had collectively inflicted Stoudemire with one superficial gunshot wound to the chest, two superficial slash wounds to the wrists, and five stab wounds to the torso. One of the stab wounds pierced Stoudemire's heart and caused his death.

II.

In October 1977, Gilbert and Gleaton (hereinafter "the Petitioners"), were jointly tried and convicted for the murder and armed robbery of Stoudemire. At their subsequent sentencing trial, both men received death sentences. On direct appeal, the Supreme Court of South Carolina affirmed the convictions, but reversed the sentences because of the solicitor's improper closing argument during the sentencing phase of the trial.[1] At the resentencing trial in February 1980, the Petitioners again received death sentences. The Supreme Court of South Carolina affirmed their new sentences.[2] After the United States

---

[1] State v. Gilbert, 258 S.E.2d 890 (S.C. 1979), overruled in part, State v. Torrence, 406 S.E.2d 315, 328 n.5 (S.C. 1991) (abolishing practice of in favorem vitae review).

[2] State v. Gilbert, 283 S.E.2d 179 (S.C. 1981).

4

Supreme Court declined discretionary review of their appeals,**3** the Petitioners filed applications for post-conviction relief ("PCR") in state court. Their applications were denied by separate orders following a joint hearing. The Supreme Court of South Carolina refused to consider their appeals, and the United States Supreme Court denied certiorari review.**4**

In 1984, the Petitioners filed separate petitions for writs of habeas corpus in federal district court. In June 1988, the district court granted the State's motion for summary judgment on all claims raised by the Petitioners in their PCR applications. Three years later, in August 1991, the district court vacated its order, and remanded the petitions to a magistrate judge with instructions to hold the pleadings in abeyance for sixty days while the Petitioners pursued additional remedies in state court.

The Petitioners immediately filed second PCR applications in state court. In March of 1994, the judge who presided over the joint hearing on their applications declined to grant them relief. The Supreme Court of South Carolina denied the Petitioners' petitions for certiorari review. Neither Gilbert nor Gleaton petitioned the United States Supreme Court for writs of certiorari.

During the four years in which the Petitioners' second PCR applications were litigated in state court, the parties continued to file pleadings in federal district court. In May 1992, the State moved to expedite the district court's decision. As of that date, the State waived exhaustion as to all of the claims pending before the district court. The Petitioners opposed the motion, urging the district court to wait until the state court concluded its review of their pending PCR applications. In late July 1992, however, the district court granted the State's motion to expedite.

Finally, on August 26, 1996, the district court granted the Petitioners' habeas corpus petitions. The district court found the implied mal-

_____

**3** Gilbert v. South Carolina, 456 U.S. 984 (1982).

**4** Gleaton v. Aiken, 467 U.S. 1220 (1984); Gilbert v. South Carolina, 467 U.S. 1220 (1984).

5

ice instruction, which had been presented to the jury in the 1977 guilt phase of their trial, contained unconstitutional rebuttable presumptions and was not harmless error. The district court also found the Petitioners' remaining grounds of appeal either unsubstantiated or not of constitutional magnitude.

The State appeals the district court's grant of the writs of habeas corpus. The Petitioners' cross-appeal the district court's denial of the writs on their remaining issues.

III.

The key issue on appeal is the implied malice instruction. At the close of the guilt phase of the Petitioners' trial, the trial court instructed the jury that murder is "the killing of any person with malice aforethought, either expressed or implied." The trial court explained that "malice may be expressed as where previous threats of vengeance or lying in wait or other circumstances show directly that an intent to kill was really entertained." Malice may also be implied from the "facts and circumstances of the case which are proven." In addition, the "willful, deliberate and intentional doing of any unlawful act without just cause" or the "conduct of the defendant in the use or handling of a deadly weapon" creates a rebuttable presumption of malice.

In Yates v. Evatt, the Supreme Court held that this implied malice instruction, which was the standard instruction given in South Carolina at the time of Gilbert's and Gleaton's trial, violates a defendant's due process right because the instruction erroneously shifts the burden of proof as to malice from the prosecution to the defendant.[5] The district court found the instruction to be harmful error in the Petitioners' case and granted their petitions for writs of habeas corpus. Our review of the district court's determination is plenary.[6]

The harmlessness standard for habeas review of constitutional error

_____

[5] 500 U.S. 391, 400-02 (1991), disapproved in part on other grounds, Estelle v. McGuire, 502 U.S. 62, 72 n.4 (1991).

[6] Brecht v. Abrahmson, 507 U.S. 619, 637 (1993).

6

is whether the error "had substantial and injurious effect or influence in determining the jury's verdict."[7] The Petitioners must establish "actual prejudice" as a result of the implied malice instruction in order to obtain habeas relief.[8] In a recent habeas case, Arnold v. Evatt,[9] we addressed an identical claim, based on the same implied malice instruction, and applied the analysis established by the Supreme Court in Yates.[10] The reviewing court "must only determine the error was unimportant in relation to the other evidence considered by the jury independently of the erroneous presumption."[11] In making this determination, the reviewing court must: "(1) ask what evidence the jury actually considered in reaching its verdict; and (2) weigh the probative force of that evidence as against the probative force of the erroneous presumption standing alone."[12]

Throughout its charge on malice, the trial court reminded the jurors to base their determination of malice on all of the evidence presented, that any malice presumption was rebuttable, and that the State must establish malice beyond a reasonable doubt. In asking what evidence the jury actually considered, we apply the customary presumption that the jurors followed the trial court's instructions in reaching their decision.[13] The jury also heard evidence tending to rebut malice. Notably, the solicitor presented Gleaton's statement that the killing of Stoudemire was the result of a "scuffle." Thus, as in Yates and Arnold, the jury was "free to look beyond the unlawful presumption and consider all the evidence on malice."[14]

In Arnold, we found that the implied malice instruction was not prejudicial. We based our decision on the existence of fourteen pieces of evidence showing express malice, including evidence of premeditation. Most of that evidence also supported the predicate facts under-

_____

**7** Id. (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).

**8** Id.

**9** No. 95-4019, 1997 WL 249156, (4th Cir. May 14, 1997).

**10** Id. at *2.

**11** Id.

**12** Id.

**13** Id.

**14** Id. (quoting Yates, 500 U.S. at 408).

lying the erroneous presumptions. In addition, the solicitor at Arnold's trial referred to the implied malice instruction in his closing argument. Nonetheless, we found that Arnold had failed to "tip the scales sufficiently in his favor," leading to our conclusion that "any reasonable jury, notwithstanding the implied malice instruction, would have found malice beyond a reasonable doubt."**15**

In contrast to the solicitor in <u>Arnold</u>, the solicitor in the Petitioners' case offered no evidence of express malice. Gleaton's statement to the police, as well as physical evidence at the scene of the crime, indicated that the stabbings took place as part of a scuffle. Gleaton entered the store carrying a knife, while Gilbert waited outside. Only after Gleaton and Stoudemire began to scuffle did Gilbert enter the station with a gun and shoot at Stoudemire. Stoudemire was still alive, and mobile, when the Petitioners left the station.

The State's primary argument on appeal is that the probative force of the physical evidence is sufficient to outweigh the probative force of the erroneous presumptions. In particular, the State points to the multiple wounds suffered by Stoudemire. The State relies on six cases, primarily from the Eleventh Circuit, for the proposition that the inference of intent created by the nature of the crime may be sufficient to render a burden-shifting intent instruction harmless. All of these cases pre-date <u>Yates</u> and address a broader rebuttable presumption (i.e. a person intends the consequences of his acts). Most importantly, these cases can be distinguished based on the facts. The courts found the intent instructions harmless because the extreme nature of the crimes demonstrated the defendants' overwhelming intent to ensure the death of the victims.**16** In this case, the Petitioners assaulted Stoudemire but made no effort to ensure his death.

_____

**15** <u>Id.</u> at *3.

**16** <u>Cunningham v. Zant</u>, 928 F.2d 1006, 1015 (11th Cir. 1991) (victim killed as a result of eighteen blows with wrench to head); <u>Dickey v. Lewis</u>, 859 F.2d 1365, 1371 (9th Cir. 1988) (defendant tracked victim down, shot him at point-blank range, and then blocked attempts to render assistance); <u>Williams v. Kemp</u>, 846 F.2d 1276, 1284 (11th Cir. 1988) (victim killed as a result of ten crushing blows to skull and smoke inhalation from intentional fire); <u>House v. Lavoie</u>, 843 F.2d 474, 475 (11th Cir. 1988) (defendant admitted intent to shoot victim and fired five shots at

8

We believe that the facts in the Petitioners' case more closely resemble those in Houston v. Dutton,[17] an opinion applying the Yates analysis. While we do not necessarily embrace the holding in that case, it offers some guidance as to when a burden-shifting instruction constitutes harmful error. In Houston, the defendant killed the owner of a gasoline service station during the course of a robbery by shooting him three times, twice at point-blank range. [18] The defendant claimed the killing was an accident that occurred during the course of a struggle over the gun. The trial court charged the jury that the use of a deadly weapon raised a rebuttable presumption of malice. Because of the two point-blank shots, the nature of the crime in Houston was arguably even more indicative of malice than the nature of the crime in the Petitioners' case. On habeas review, however, the Sixth Circuit held that the implied malice instruction was harmful error.[19]

The solicitor in the Petitioners' case also exacerbated the prejudicial effect of the implied malice instruction. In particular, he referred to one of the rebuttable presumptions in his closing argument. In Hyman v. Aiken, this court found an identical malice instruction given in a South Carolina case to be prejudicial.[20] Although Hyman involved different circumstances, we noted that the "importance of the malice instructions is emphasized by the solicitor's reliance on them in his closing argument . . . ."[21] This is not a dispositive factor,

_____

close range, hitting victim in head); Tucker v. Kemp, 762 F.2d 1496, 1503 (11th Cir. 1985) (victim kidnaped, driven to remote location, and then killed as a result of crushing blow to skull with metal pole); Lamb v. Jernigan, 683 F.2d 1332, 1342 (11th Cir. 1982) (defendant stabbed seventy-two year old victim eleven times, three of which were immediately disabling).

[17] 50 F.3d 381 (6th Cir.), cert. denied 116 S. Ct. 272 (1995).

[18] Id. at 383.

[19] Id. at 387. See also Hernandez v. Rayl, 944 F.2d 794, 797 (10th Cir. 1991) (victim shot four times during bar altercation under uncertain circumstances; burden-shifting intent instruction found harmful).

[20] 824 F.2d 1405, 1410 (4th Cir. 1987).

[21] Id.

9

as implied by our holding in <u>Arnold</u>.**22** Nonetheless, in the absence of overwhelming evidence of malice, whether express or implied, it becomes more likely that the solicitor's use of the presumption influenced the jury's determination.

The district court found that because the source of the jury's malice determination "may well have been the constitutionally infirm jury charge, it cannot be said to be harmless and the convictions cannot stand." We agree. Unlike the defendant in <u>Arnold</u>, the Petitioners have tipped the scales sufficiently in their favor. The relevant inquiry is not whether "in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in <u>this</u> trial was surely unattributable to the error."**23** A reasonable jury, looking at all of the facts in this case, might have inferred malice from the presence of the weapons, the wounds, and Stoudemire's death. Under these circumstances, however, the presumptions in the implied malice instruction were prejudicial.

In the absence of evidence of express malice, and having examined the evidence of implied malice presented by the State, we harbor "a grave doubt as to [the] harmlessness" of the implied malice instruction.**24** Accordingly, we affirm the district court's order granting habeas relief to the Petitioners.

IV.

Our decision to affirm the judgment of the district court on the basis of the implied malice instruction relieves us of the responsibility to consider any of the other issues raised by the Petitioners on cross-appeal.**25** However, we do note that the Petitioners' ineffective assistance of counsel claims could provide an independent ground for the grant of their habeas petitions.

_____

**22** No. 95-4019, slip op. at 6.

**23** <u>Sullivan v. Louisiana</u>, 113 S. Ct. 2078, 2081 (1993) (emphasis in original).

**24** <u>O'Neal v. McAninch</u>, 115 S. Ct. 992, 995 (1995).

**25** <u>See Hyman</u>, 824 F.2d at 1417 (Russell, J., and Widener, J., concurring in part and dissenting in part).

10

It is our responsibility to order appropriate relief for those petition-ers who demonstrate the existence of harmful error. We must fulfill this responsibility even if we are convinced of the guilt of the Peti-tioners and even if our decision requires the State to either release them, or retry them, nearly twenty years after their initial trial.

<u>AFFIRMED</u>

11