# CASES

DECIDED IN THE

# SUPREME COURT OF GEORGIA

AT THE

# OCTOBER TERM, 1927

---

## WRIGHT v. THE STATE.

1. A count of an indictment for murder, which alleged that the accused did unlawfully, wrongfully, and with malice aforethought kill and murder a person named, by running a certain automobile against and upon that person, thereby inflicting a mortal wound from which he died, was sufficient as against a demurrer on the grounds that it did not allege that the homicide was intentional or willful, and did not charge reckless conduct; that the allegation of malice aforethought was not equivalent to charging an intentional homicide; and that it was not alleged that the automobile was a deadly weapon or was used in a manner likely to produce death, or that it was driven in an illegal manner in or to a place where such driving or running would likely produce death.
2. A count alleging that the accused, wrongfully, unlawfully, and involuntarily, and while in the commission of an unlawful act, to wit, driving an automobile upon a highway described, at a speed of fifty miles per hour when going around a sharp curve and while meeting a wagon, this being an act which in its consequences naturally tended to destroy life, did run and drive the automobile against and upon the person named, an infant of three years, who was standing on the extreme outer edge of the highway and in clear view of the accused, thereby inflicting upon that person a mortal wound from which he died, did not allege implied malice, and was not sufficient as a charge of murder.
3. There being evidence that would have authorized a finding that the automobile was being lawfully operated, and that the homicide was committed by such lawful operation without due caution and circumspection,

---

Criminal Law, 16 C. J. p. 1059, n. 42.

Homicide, 29 C. J. p. 1084, n. 43; 30 C. J. p. 89, n. 58; p. 110, n. 20, 28; p. 112, n. 56; p. 417, n. 91.

Statutes, 36 Cyc. p. 1146, n. 22.

1

it was error at the trial to omit to give in charge to the jury the law of involuntary manslaughter in the commission of a lawful act done in an unlawful manner.

4. If, in addition to the charge to the jury in the words of the code on involuntary manslaughter, an elaborative instruction is desired as to the distinction between an act which in its consequences naturally tends to destroy human life and an act which does not so tend, an appropriate request should be submitted to the trial judge.

No. 5855. March 3, 1928.

Murder. Before Judge Perryman. Warren superior court. January 13, 1927.

*J. B. & T. R. Burnside,* for plaintiff in error.

*George M. Napier, attorney-general, M. L. Felts, solicitor-general,* and *T. R. Gress, assistant attorney-general,* contra.

Atkinson, J. 1. The first count in the indictment charged Tom Wright "with the offense of murder," for that he, "with force and arms, did unlawfully, wrongfully, and with malice aforethought, kill and murder" Algernon Baker Jr., "by then and there running a certain Ford touring-car automobile then and there driven and operated by him," the defendant, "against and onto the said" Baker, "and thereby inflicting upon the said" Baker "a mortal wound, from which said wound the said" Baker "then and there died; contrary to the laws of the State, the good order, peace, and dignity thereof." There was a demurrer to this count, upon the following grounds: (1) It is not alleged that the homicide was intentional or willful. (2) There being no allegation that the homicide was with a weapon likely to produce death, the charge that the homicide was with "malice aforethought" was not the equivalent of or sufficient to charge "that the homicide was intentional." (3) The indictment does not charge reckless conduct; and no "intention" to commit a crime being alleged, the indictment was insufficient to charge the offense of murder. (4) All the allegations are "consistent with accidental killing." (5) It is not alleged that the car "was a weapon likely to produce death, or used in a manner likely to produce death, or that it was driven in an illegal manner, or to or in a place where such driving or running would likely produce death." (6) No intention to kill will be presumed where the instrument used in the killing is not an instrument likely to produce death, nor used in a manner likely to produce death. (7) Every allegation in the indictment might be true and the defendant not be guilty of murder.

It being alleged that death resulted from a wound produced by the defendant by running the automobile "against and onto" the person slain, and that the said acts of the defendant were unlawful and "with malice aforethought," this count of the indictment was sufficient as against all of the several grounds of demurrer. The allegation that the homicide was committed by the defendant "unlawfully" and with "malice aforethought," by running the automobile "against and onto" the person slain, was the equivalent of an allegation that the automobile was intentionally run "against and onto" the person slain, because the words above quoted necessarily imply intent to commit the alleged unlawful act of killing. A necessary allegation in an indictment for murder, though not expressed in the technical terms, may be expressed by any words which are the legal equivalent of the technical term generally employed for such purpose. *Gates* v. *State,* 95 *Ga.* 340 (22 S. E. 836).

2. The second count charged Tom Wright "with the offense of murder," for that he, "with force and arms, did wrongfully, unlawfully, and involuntarily, and while in the commission of an unlawful act, to wit, while driving and operating himself a certain Ford touring-car automobile along, upon, and over a certain highway of said county known as the highway from Warrenton, Ga., to Jewell, Ga., and on said highway near the home of A. Baker, at a rate of speed greater than forty miles per hour, to wit, at fifty miles per hour, and a time when the said Tom Wright was approaching and going around a certain sharp curve in said highway and while meeting a wagon in said highway, said act of the said Tom Wright being then and there an·act which "in its con-. sequences naturally tended to destroy the life" of Algernon Baker, Jr., an infant of three years, who was at said time standing upon the extreme outer edge of said highway on the west side thereof, and in clear view of the said Tom Wright, and he, the said Tom Wright, did then and there, and in the manner and under the circumstances aforesaid, run, drive, and operate the said Ford touring-car automobile onto and against the said Algernon Baker Jr., a human being in the peace of said State then and there being, thereby inflicting upon the said Algernon Baker Jr. a mortal wound, from which said wound the said Algernon Baker Jr. then

and there died; contrary to the laws of said State, the good order, peace, and dignity thereof."

It is declared in the Penal Code, § 67: "Involuntary manslaughter shall consist in the killing of a human being without any intention to do so, but in the commission of an unlawful act, or a lawful act, which probably might produce such a consequence, in an unlawful manner: Provided, that where such involuntary killing shall happen in the commission of an unlawful act which, in its consequences, naturally tends to destroy the life of a human being, or is committed in the prosecution of a riotous intent, or of a crime punishable by death or confinement in the penitentiary, the offense shall be deemed and adjudged to be murder." The proviso in this section must be considered in connection with section 60 of the Penal Code, which defines murder as "the unlawful killing of a human being, in the peace of the State, by a person of sound memory and discretion, with malice aforethought, either express or implied." There can be no murder without *malice express* or *implied*. If an indictment does not allege *malice* in express terms, it must do so by employment of equivalent words. *Gates* v. *State,* supra.. The proviso in section 67 is founded on the principle of implied malice, and does not dispense with necessity of expressly alleging implied malice or its equivalent in an indictment for murder. If it did so, it would conflict with section 60; and it should not be so construed. The proviso in section 67 does not name specific acts that would bring a case within its provisions. The second count in the indictment does not expressly allege implied malice. Whether it alleges the equivalent of implied malice depends upon the language employed. To be sufficient for that purpose the alleged acts of the defendant should be done "so carelessly and recklessly that the law would imply an actual intention to kill from the mere wantonness of the act, and death resulted." *Pool* v. *State,* 87 *Ga.* 526 (8) (13 S. E. 556). The allegation in the second count that the specific acts in their "consequences naturally tended to destroy the life" of the child is no broader than the specific facts alleged. These were insufficient to imply malice. The second count of the indictment was sufficient as a charge of involuntary manslaughter in the commission of an unlawful act, but it was not sufficient as a charge of murder. It was an unnecessary count to charge involuntary manslaughter, because that offense was included in the first count.

3. "Intentionally to point a pistol at another, in fun or otherwise, save in the instances excepted by the statute, is unlawful; and if, while performing such unlawful act, the pistol is accidentally discharged, the person so acting, if not guilty of murder, would be guilty of involuntary manslaughter." *Leonard* v. *State,* 133 *Ga.* 435 (5) (66 S. E. 251). Though conflicting, there was evidence in this case tending to show that the automobile was driven at a rate of speed of 15 to 20 miles per hour. This evidence would have authorized a finding that the automobile was being lawfully operated, and that the homicide was committed by a lawful operation of the automobile without the exercise of due caution and circumspection. In this view it was erroneous for the judge to omit to charge the law of involuntary manslaughter in the commission of a lawful act done in an unlawful manner.

4. Where the court gives in charge to the jury § 67 of the Penal Code, if the defendant desires more elaborate instructions as to the distinction "between an act which in its consequences naturally tends to destroy human life, and an act which in its consequences does not tend to destroy human life," there should be an appropriate written request stating the charge that it is desired the court should give.

As the judgment refusing a new trial will be reversed, it is unnecessary to deal with those grounds of the motion for new trial which complain that the verdict did not state upon which count it was based, and which relate to refusal of the judge to continue or postpone the case, and to his allowing the attorneys appointed by the court to represent the defendant to withdraw from the case.

*Judgment reversed. All the Justices concur, except Hines, J., who dissents.*

GILBERT, J., specially concurring. I concur in the judgment of reversal, basing the same on the assignment of error in the third special ground of the motion for new trial. That ground assigns error on the failure of the court to instruct the jury on the law of involuntary manslaughter "in the commission of a lawful act without due caution and circumspection." There was evidence tending to show that the automobile was driven at a rate of speed of 15 to 20 miles per hour. This evidence would have authorized a finding that the automobile was being lawfully operated, and that the death occurred because, in the lawful operation of the auto-

mobile, the defendant did not exercise due caution and circumspection. I do not concur in reversing the judgment overruling the demurrer to the second count of the indictment. The indictment was good as against the demurrer, and charged the offense of involuntary manslaughter in the commission of an unlawful act. Notwithstanding that offense was called "murder," the facts alleged, according to the universal rule, determine what offense was actually charged. That count being good as charging involuntary manslaughter, it could not have been stricken on the demurrer. As I view the demurrer to that count, it does not raise the question, as ruled by the majority, that the second count failed to allege that the killing was done with "malice aforethought." The exact language of the demurrer is as follows: "Defendant says that, no malice or willful conduct being alleged against him, the most such acts show against him is that the homicide was purely accidental." Properly construed, which must have been most strongly against the demurrant, the language quoted means that the facts alleged in that count do not show malice. That count is based upon section 67 of the Penal Code, which in its terms negatives express malice. Murder, of course, does not exist from a homicide where there is no malice. The Code section mentioned defines murder dependent upon legal or implied malice, due to the reckless disregard of human life. *Collier* v. *State, 39 Ga.* 31 (99 Am. D. 449); *Hamillon* v. *State, 129 Ga.* 747 (59 S. E. 803). The demurrant had this in view, and he was attacking the indictment for the reason that the facts alleged were not sufficient to show implied malice.

In the third division of the opinion this court regards the lawfulness or unlawfulness of the *possession* of the automobile as being the determining factor as to whether the accused killed the deceased by reason of an involuntary act naturally tending to destroy human life. In my opinion the lawfulness of the *possession* is immaterial. The question is whether the accused was *operating* the automobile lawfully or unlawfully. The case of *Austin* v. *State,* 110 *Ga.* 748 (36 S. E. 52, 78 Am. St. R. 134), does not furnish authority for the conclusion reached. In *Flannigan* v. *State,* 136 *Ga.* 132 (70 S. E. 1107), there was a written request duly presented for a charge. Without going into details, I think it sufficient to say that the other authorities cited by the majority do not support the ruling.

HINES, J., dissenting. "Murder is the unlawful killing of a human being, in the peace of the State, by a person of sound memory and discretion, with malice aforethought, either express or implied." Penal Code, § 60. An indictment charging murder under this section must generally allege that the homicide was committed with malice aforethought. This is so because malice aforethought is made an essential element of the crime of murder, as defined under this section. It has been held that the omission to use the language, "malice aforethought," is not fatal to an indictment for murder under this section. The employment of any language which may be its legal equivalent is sufficient. *Gates* v. *State,* 95 *Ga.* 340 (supra). It would seem that the unlawfulness of the killing is as much an essential element of murder as malice. A person might, with deliberate intention, and with the bitterest malice, kill another, and yet, if the killing was not unlawful, the homicide would not be murder. Yet this court has held that an indictment charging murder is not demurrable because it does not allege that the killing of the deceased was unlawful. *Coxwell* v. *State,* 66 *Ga.* 309; *Davis* v. *State,* 153 *Ga.* 669 (113 S. E. 11). As used in section 60 of the Penal Code, malice is an unlawful intention to kill, without justification or excuse. *Bailey* v. *State,* 70 *Ga.* 617. In the meaning of that section, malice is the deliberate intention unlawfully to take away the life of a fellow creature, and may be express or implied. *Carson* v. *State,* 80 *Ga.* 170 (5 S. E. 295). Under that section, malice is an intent to kill a human being in a case where the law would neither justify nor in any degree excuse that intention, if the killing should take place as intended. *Taylor* v. *State,* 105 *Ga.* 746 (31 S. E. 764). In other words, section 60 of the Penal Code is applicable to cases where slayers kill intentionally. It has no application to cases of unintentional homicide.

Furthermore, this section does not embrace all cases of murder. It is not an all-comprehensive definition of murder in this State. For instance, "The willful killing of an unborn child so far developed as to be ordinarily called 'quick,' by any injury to the mother of such child, which would be murder if it resulted in the death of such mother, shall be punished by death or imprisonment for life, as the jury trying the case may recommend." Penal Code, § 80. So fœticide by this section is made murder. So

where an "involuntary killing shall happen in the commission of an unlawful act which, in its consequences, naturally tends to destroy the life of a human being, or is committed in the prosecution of a riotous intent, or of a crime punishable by death or confinement in the penitentiary, the offense shall be deemed and adjudged to be murder. Penal Code, § 67. Here we have another definition of what constitutes murder. This section defines a different species of murder. It embraces unintentional homicide. It embraces homicides committed without "malice aforethought." It embraces cases which can not fall under section 60, as under that section homicides must be with "malice aforethought," and therefore intentional homicides. As the pleader wishes to frame an indictment for murder growing out of an involuntary homicide, committed in the commission of an unlawful act which in its natural consequences tends to destroy human life, it would seem incongruous to allege that the homicide was committed with deliberate intention, that is, with "malice aforethought." In such cases, that is, cases falling under section 67, the allegation of malice is entirely unnecessary. This doctrine has been laid down: "Allegation of malice is unnecessary in those cases where the law conclusively presumes malice, as, for instance, where the killing occurred in the commission of an unlawful act, or by laying in wait." 1 Michie on Homicide, 465, § 129 (1b). The principle has thus been stated: "Where malice is implied by law, as where the crime is alleged to have been committed by the accused while in the commission of an unlawful act, or, under some statutes, while lying in wait, or by administering poison, it is not necessary to allege malice." 11 Standard Enc. Proc. 620. So where an indictment charged, in proper form, an attempt to commit a robbery, and then averred that the defendant, with others in such attempt, did purposely with a loaded revolver shoot the deceased, with intent to kill him, and did by means of the shooting, with such intent, give him a mortal wound of which he instantly died, and that by this means, in an attempt to commit a robbery, they did unlawfully murder the deceased, it was held that such indictment sufficiently charged murder in the second degree, although the word "malice" was not employed. Lindsey *v.* State, 69 Ohio St. 215, 69 N. E. 126. Under a statute which made it murder to cause death by drugs administered and instruments

thrust into the body of the deceased with the specific intent to pro-
duce an abortion, an indictment was held good, though it did not
allege "malice aforethought," for the reason that the acts charged
implied malice. State v. Thurman, 66 Iowa, 693 (24 N. W. 511).
So under a statute making the offense of producing a miscarriage
murder if the woman dies, but not expressly making malice an
ingredient of the crime, an indictment setting forth the offense
in the language of the statute is sufficient, without charging malice.
Johnson v. People, 33 Colo. 224 (80 Pac. 133, 108 Am. St. R.
85). The Colorado court said: "The proceeding against defend-
ant was not under the general murder statute, but was based upon
this particular statute which makes the doing of the act therein
prohibited, in a certain contingency, murder, . . and it is suffi-
cient to set forth the offense in the language of the statute, which
was done; and proof that the act prohibited thereby was com-
mitted establishes the ingredient of malice, even if that element
should be held essential."

While the precise question involved in this case has never been
decided by this court, the construction it has put upon this section
bears out the position taken above. In *McGinnis* v. *State,* 31 *Ga.*
236, 262, the defendant requested the court to charge that the
presumption of malice, arising from the circumstances to which
this section refers, was one of fact, and one which might be re-
butted by proof. This court, through Judge Lumpkin, said:
"Such is not our interpretation of the Code. Whenever the life
of a human being is destroyed under the state of facts contem-
plated by this section, the offense shall be deemed murder, and
such is the judgment which the law pronounces upon it. Suppose
the life of a human being is destroyed where no considerable provo-
cation appears, and where all the circumstances of the killing show
an abandoned and malignant heart, is not the offense murder?
And is not this the stern judgment of the statute, wholly irre-
spective of the past or present relations subsisting between the
slayer and the slain? If I discharge a loaded gun or pistol at a
crowd and kill my best friend, is not this murder? Who ever
doubted it?" Section 67 denounces an involuntary killing, which
happens in the commission of an unlawful act which, in its con-
sequences, naturally tends to destroy the life of a human being,
as murder. The section declares that "the offense shall be deemed

and adjudged to be murder." The statute does not make malice an ingredient of the offense so defined. The second count of the indictment charges murder in the language of this section. "Every indictment or accusation of the grand jury shall be deemed sufficiently technical and correct, which states the offense in the terms and language of this Code, or so plainly that the nature of the offense charged may be easily understood by the jury." Penal Code, § 954. This section was intended to sweep away the technicalities of the common law, and to make any indictment good which states the offense in the language of the statute. The second count of the indictment in this case complies fully with this section, and should be upheld. So I feel constrained to dissent from the opinion of the majority.