## 55922. CRAWFORD v. THE STATE.

SMITH, Judge.

Allen Crawford was tried jointly with his wife and daughter for the offense of cruelty to a child. Code § 26-2801. Crawford, who did not testify and offered no evidence in his behalf, was convicted along with his co-defendants; each received a five-year sentence. He contends on appeal that he should have been tried separately from the other defendants, that the evidence did not support the verdict, and that the district attorney interjected impermissible comment during his closing argument. We agree that Crawford's motion for severance should have been granted, and for that reason we reverse the judgment.

The question of severance is best viewed in light of the evidence adduced at this trial. While we expressly conclude that there *was* evidence to support the verdict against him, we are mindful that the incriminating evidence was scanty indeed, and, in our view, the same evidence very likely would not result in a conviction if Crawford were tried separately. Thus follows the conclusion that Crawford was denied a fair trial by the trial court's refusal to sever.

Crawford lived in a 12-foot by 60-foot mobile home. Living with him were his wife, seven children, and one

grandchild. The Department of Family & Children Services (hereinafter, the "Department") consigned Elaine Crawford, her brother and sister to live with their uncle, Allen Crawford. This added up to a total of thirteen people living in the small mobile home. Crawford worked two jobs, one of which was a night job. After the victim, Elaine Crawford, came to live with him, Crawford's wife started working also. This left ten children in this mobile home under the care and control of sixteen-year-old Cynthia, Crawford's oldest daughter and the oldest person present during the day.

There never was any evidence offered as to how much Crawford received for board and keep for the victim and her brother and sister. Nor was there any evidence as to the amount the wife earned. Crawford earned in the neighborhood of $11,000 per year. The evidence showed that the trailer was ill kept and dirty, with trash, bottles and refuse abundant on the premises.

Why three children would be assigned to such a place is not adequately explained. Thirteen people were jammed into 720 square feet of living space. That is about 55 square feet per person, or a strip 5 feet by 11 feet long. The situation was a miserable one. The Department had to know all of this because it always investigates the foster homes before assigning children. The doctor who examined the child after her death stated that she had been suffering from physical abuse and malnutrition "over a time of one to two years," before her death. In view of this report, the question logically arises: Why didn't the Department worker or workers, who visited the home several times in 1976, her guidance counselor, or the school nurse who examined her, ever suspect something was wrong, report it and/or do something about it? Crawford tried to contact the Department several times and finally went to the Department between Christmas and New Year's, 1977 to report that the other children were picking on the victim and to request that she be moved. Nothing was done, and the next report the Department got was that Elaine Crawford was dead.

Therefore, it can be seen that the Department asked for trouble, stood by as it developed, and did nothing about it. The local Department in this case is not alone in doing

something that was doomed to failure from its inception.[1] The fact that no one in the Department could see this is what is so disturbing.

The victim died as a result of severe beatings inflicted by Cynthia and her mother, both of whom have been convicted of murder and sentenced to life imprisonment. Following the murder convictions, this action for cruelty to children was brought against the mother, the daughter, and Crawford, although there was no evidence that Crawford was ever a party or witness to physical abuse of the victim. The state's theory against him was that he failed to provide for the girl and that he probably knew she was being beaten while he was away, but he failed to fulfill his duty as a guardian when he neglected to take steps to prevent any such abuse during his absence.

Cruelty to children occurs when a parent or guardian "wilfully deprives the child of necessary sustenance or maliciously causes the child cruel or excessive physical or mental pain." Code § 26-2801. As we noted earlier, there is *some* evidence from which a jury might infer that Crawford wilfully deprived the child or maliciously caused suffering and pain. But that evidence is slight, and it is mostly circumstantial. In contrast, as to both his daughter and his wife, there was strong evidence of the above, including their respective confessions, and there

---

[1]A similar case of apparent bad judgment was recently reported in the newspaper. The front-page headline in the June 10, 1978, Atlanta Journal/Constitution was: "Accused Pimp Given Custody of Girl, 17." The accompanying article stated that the policeman handling the case was distressed because the home of a known pimp was approved by the Department. The teenager said she worked for the pimp, and detectives said she had run away from the pimp because she did not want to "work the streets" for him anymore. This unbelieveable situation came to light when the alleged pimp asked the police to find the girl who had run away from him. According to one detective, the pimp contended he had a right to the teenager because the Department had placed her in his custody.

was shocking, graphic evidence depicting the extent of the injuries the two women admittedly inflicted on the victim.

The question we face, and answer affirmatively, is: Was Crawford's trial prejudiced by reason of his being tried alongside his daughter and wife? The decision of whether to sever the trial is vested in the trial judge's discretion, but there are a few concrete questions the trial court should address when exercising its discretion, and in the light of which an appellate court may review that exercise of discretion. Some are: "1. Will the number of defendants create confusion of the evidence and law applicable to each individual defendant? 2. Is there a danger that evidence admissible against one defendant will be considered against another despite the admonitory precaution of the court? 3. Are the defenses of the defendants antagonistic to each other or to each other's rights?" *Cain v. State,* 235 Ga. 128, 129 (218 SE2d 856) (1975).

We believe that the evidence and law applicable to Crawford was significantly different from that applicable to his two co-defendants. The evidence showed the co-defendants' direct and affirmative involvement in a cruel and heinous crime. The law is clear that they were guilty of cruelty. On the other hand, the evidence showed no more than possibly a passive involvement on Crawford's part. The evidence illustrated a situation in which it was perhaps impossible for Crawford to provide for the sustenance of this child, and it may well have been impossible for him to prevent any abuses which were occurring. Moreover, and most importantly, we believe it highly probable, in view of the minimal evidence against Crawford, that he was convicted as the result of some spillover of the substantial evidence adduced against his co-defendants. Where evidence against Crawford was so slight, he should not be convicted merely by association, or by being enveloped within a vague, generalized notion that these defendants, as a group but in different ways, had contributed to the suffering and death of the victim. Where the appellant's conviction more likely resulted from the evidence against his co-defendants than from the evidence against him, we do not hesitate to conclude that

he was entitled to a separate trial. Since the motion for severance accurately and sufficiently apprised the court of the nature of the above evidence which would be entered against the various defendants, the motion should have been granted.

The above discussion disposes of the first two enumerations. We do not reach the question concerning the district attorney's closing argument, for that alleged error was not preserved by timely objection.

*Judgment reversed. Deen, P. J., and Banke, J., concur.*

ARGUED JUNE 5, 1978 — DECIDED DECEMBER 5, 1978 — REHEARING DENIED DECEMBER 19, 1978 — ■■■■■■■■

*Charles Thornton,* for appellant.
*William F. Lee, Jr., District Attorney, Michael G. Kam, Assistant District Attorney,* for appellee.