S91A1586. McCARTNEY v. THE STATE.

(414 SE2d 227)

</div>

BELL, Justice.

Appellant Jeffrey Paul McCartney was convicted of the malice murder of his wife's son, David Maxwell Moss, and cruelty to children

to Moss.[1] McCartney appeals, and we reverse.

1. Appellant's first enumeration of error is that the trial court erred by failing to sustain his objections to the opinion testimony of Dr. Joseph Burton, the forensic pathologist who had performed the autopsy on the child. Appellant contends that Dr. Burton was permitted to invade the province of the jury by testifying that abuse was the cause of the child's death. We find merit in this contention.

At trial the following questions by the State and testimony by Dr. Burton, along with objections and colloquy between the court and counsel, were recorded:

> THE STATE: Now that the photographs have been admitted, Doctor, if you could, please take each one and go through there and describe the bruises and what you can conclude from the bruises, how old they are, et cetera, if you would, please, sir.
>
> . . .
>
> DR. BURTON: . . .
>
> The pattern of these bruises is virtually diagnostic of a child with maltreatment syndrome, which is what we medically call this syndrome where we have multiple bruises like this distributed over areas of the body in such a way that it would be very improbable that these bruises would have occurred by accident.
>
> That does not mean that one or more these bruises didn't happen by normal play or by accident to this child, but the probability of these bruises like you see here occurring in multiple accidents is almost unfathomable.
>
> . . .
>
> THE STATE: You mentioned a childhood maltreatment syndrome. Is that also the battered child syndrome?

---

[1] David Maxwell Moss died on September 1, 1988. On February 15, 1990, appellant was indicted for malice murder, felony murder, and cruelty to children. On January 29, 1991, a jury found appellant guilty on all three counts, and on January 31 the court sentenced appellant for malice murder and cruelty to children. He filed a motion for new trial on February 25, 1991. On March 5 the court reporter certified the trial transcript and in April 1991 the court denied the motion for new trial. The notice of appeal was filed May 6, 1991. On August 19, 1991, the clerk of the trial court certified the record. On August 26 the record was docketed in this Court. The appeal was orally argued on October 16, 1991.

DR. BURTON: Yes, sir. I reserve the word battered child syndrome for the child who has multiple broken bones and multiple injuries such as that.

Most of the cases that we see don't have multiple broken bones or multiple bones in different stages of healing. They are much like this child, and the term that I use and many pathologists use is the childhood maltreatment syndrome. It takes into consideration those cases where there is a single instance, an isolated instance of abuse that results in significant injury or death.

It considers those cases where there is emotional or nutritional deprivation that may lead to illness and sometimes to death, and it considers those cases where over a shorter period of time that there may be injuries that are escalating in their severity until the child appears to have died from an injury. This is what I — the term that I use to describe these particular cases.

. . . [Emphasis supplied.]

Later in the course of his testimony, Dr. Burton was permitted to give the following opinions:

DR. BURTON: It was my opinion that the injuries that I observed in this child, as well as the injuries to the brain and skull fracture that was present, make up the conditions that are required to make the diagnosis of a childhood maltreatment syndrome or the abused child syndrome. It is my opinion that that is the manner by which these injuries occurred that resulted in the death of this child.

. . .

DR. BURTON: If you isolate any particular injury in this child and say, "Could it have happened like this or like that," the answer is almost always yes. These cases have to be looked at as a case [sic] with a constellation of injuries and the best possible explanation to explain how these injuries got there is in my opinion that the fatal injuries occurred in the process of what would be called the childhood maltreatment syndrome.

As the above excerpts from the transcript show, during his testimony Dr. Burton testified that in his opinion the "childhood mal-

treatment syndrome or the abused child syndrome . . . is the manner by which these injuries occurred that resulted in the death of this child," and that "in my opinion . . . the fatal injuries occurred in the process of what would be called the childhood maltreatment syndrome." This testimony amounts to an opinion that the child died of abuse, and in this regard the testimony is unacceptable because it was not beyond the ability of the jurors themselves to draw the inference.

The leading case on this issue is *Allison v. State*, 256 Ga. 851 (353 SE2d 805) (1987). In *Allison*, experts for the state testified that the child sexual abuse syndrome had certain characteristics. The experts indicated that the child in that case had symptoms matching the characteristics of the syndrome, and one went even farther, testifying that " '[i]n my professional opinion, she has been sexually abused.' " Id. at 851-852. This Court held that "the opinion of the expert that the child had been abused" was inadmissible because the jury was able to decide on its own "whether the child *in fact* was abused, and, if so, whether Allison did it." (Emphasis in original.) Id. at 853 (6). Cf. also *Harris v. State*, 261 Ga. 386 (405 SE2d 482) (1991) (physician testified, based on physical examination, that child had been sexually molested).

In the present case, Dr. Burton's testimony that the childhood maltreatment syndrome or abused child syndrome was the "manner" in which the fatal injuries occurred, and that the fatal injuries occurred "in the process" of the childhood maltreatment syndrome, constituted his opinion that the fatal injuries in fact resulted from child abuse. Accordingly, as the jurors had the ability to reach this conclusion themselves, we hold that the trial court erred by allowing Dr. Burton's testimony.

Moreover, considering the critical nature of Dr. Burton's testimony and its potential to influence the jury, as well as the circumstantial nature of the evidence in this case, we are unable to conclude "that it is highly probable that the error did not contribute to the jury's verdict." *Johnson v. State*, 238 Ga. 59, 61-62 (230 SE2d 869) (1976). We therefore reverse the judgment of the trial court.

2. In his second enumeration of error appellant raises the question of the sufficiency of the evidence to support his convictions. Appellant contends that the injuries suffered by the child resulted from "normal childhood falls, innocent play, or medical intervention." However, there was evidence that appellant physically abused the child, and that the child died as the result of the abuse. We find that the evidence was sufficient to meet the test of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

3. McCartney's wife testified as a prosecution witness. OCGA § 24-9-23 (a) provides that a "[h]usband and wife shall be competent but shall not be compellable to give evidence in any criminal proceed-

ing for or against each other," but § 24-9-23 (b) also provides that the foregoing privilege "shall not apply in proceedings in which the husband or wife *is charged with a crime against the person of a minor child*," (emphasis supplied). In his third enumeration of error, appellant contends that § 24-9-23 (b) violates the equal protection clauses of the Georgia and United States constitutions. However, as it does not appear that McCartney raised this issue in the trial court, he cannot raise it for the first time on appeal. *Shirley v. State*, 254 Ga. 723, 724 (334 SE2d 154) (1985).

4. At trial appellant sought to have a police officer testify about a statement appellant had made to the officer. In his fourth enumeration of error appellant contests the trial court's exclusion of such testimony. We find no error, as appellant's statement to the officer amounted to a self-serving declaration. *Beck v. State*, 254 Ga. 51, 53 (11) (326 SE2d 465) (1985); *Dickey v. State*, 240 Ga. 634, 641 (6) (242 SE2d 55) (1978).

5. In his fifth enumeration of error appellant contends that the court erred in failing to merge the conviction for cruelty to children with the conviction for malice murder. His argument is that cruelty to children was, as a matter of fact, a lesser included offense of malice murder. However, the offense of cruelty to children requires proof that the victim was younger than 18, OCGA § 16-5-70, whereas the offense of malice murder only requires proof that the victim was a human being, OCGA § 16-5-1. Accordingly, to prove cruelty to children, at least one fact — the age of the victim — had to be established in addition to the facts used to establish malice murder, and the offense of cruelty to children therefore was not included as a matter of fact in the offense of malice murder. See *Alvin v. State*, 253 Ga. 740, 741-742 (1) (325 SE2d 143) (1985).

*Judgment reversed. All the Justices concur, except Hunt and Fletcher, JJ., who dissent.*

DECIDED MARCH 19, 1992 —
RECONSIDERATION DENIED APRIL 2, 1992.

*Brown, Katz, Flatau & Hasty, Sandra J. Popson,* for appellant.
*Robert E. Keller, District Attorney, Todd E. Naugle, Assistant District Attorney, Michael J. Bowers, Attorney General, C. A. Benjamin Woolf, Staff Attorney,* for appellee.