## S97A0879. LOREN v. THE STATE.
(493 SE2d 175)

THOMPSON, Justice.

Donna Newman Loren was tried and convicted, along with her

---

husband James Loren, of malice and felony murder in the beating death of her four-month-old son.[1] On appeal, she asserts that the trial court erred in failing to grant a severance of defendants and in refusing to give certain requested jury instructions. Finding no reversible error, we affirm.

James Loren approached a police officer in a supermarket parking lot and asked the officer to call an ambulance because his stepson had stopped breathing. The officer drove James to his residence nearby. The child was found lying on the floor in the apartment, wearing only a diaper. There were several bruises on the child's face and forehead, and he was not breathing. Appellant, who was standing in the same room, told the officer that the baby had slipped from her hands and fallen in the shower two days earlier. She also stated, "I guess you're going to have to call DFACS now." The child was admitted to the hospital in a comatose state.

In a subsequent statement to police later that evening, appellant revealed that she had lied regarding the fall in the shower for fear that DFACS would remove the child from her care. Appellant's husband told police that it was he who had dropped the child in the shower.

About an hour before the police officer brought James to the Loren residence, the child's biological father went there to get the child for a prearranged visitation. The child was on the floor in a bedroom, crying. When the father attempted to go toward the bedroom, appellant told him that the child was ill. She then placed herself on top of the child preventing the father from seeing him, and disallowing the visitation. The father also testified that on other occasions he observed appellant lift the child by his arms and shake him "pretty hard."

Several weeks earlier, appellant's aunt observed bruises on the child's face and when she inquired about the cause of the injuries, appellant responded that the child had fallen out of his infant carrier onto the floor. Two weeks before the child's death, appellant's aunt observed more serious injuries: the child's ear was completely blackened, there were severe bruises on both sides of the child's head, and finger bruises on his hips and buttocks. When she asked appellant

---

[1] The crime occurred on September 16, 1993. A true bill of indictment was returned on November 30, 1993, charging appellant with malice murder and felony murder with the underlying offense of cruelty to children. Trial commenced on July 11, 1994, and on July 18, 1994, appellant was found guilty of both malice and felony murder. The felony murder conviction was vacated and a sentence of life imprisonment for malice murder was entered on August 3, 1994. A motion for new trial was filed on August 4, 1994, and amended on August 23, 1994. The motion was denied on January 29, 1997. A notice of appeal was filed on February 18, 1997. The case was docketed in this Court on March 10, 1997, and oral argument was held on May 19, 1997.

who was beating the child, appellant responded, "nobody" and she began to cry. The aunt advised appellant to seek medical attention for the child, but appellant did not respond to the admonition. On that occasion, the aunt showed the child to the biological father and they decided to alert DFACS. The DFACS caseworker determined that there was insufficient evidence to conclude that the child had been abused, but agreed to investigate further. The child's father later asked appellant how the child had sustained those bruises, and she explained that he had fallen off a bed.

Another witness likewise testified that she had observed severe bruises on the child's face and was told by appellant that he had fallen off the bed. This witness had also observed appellant shaking the child.

The child died on the afternoon following his admission to the hospital. The medical examiner testified that the child's death was due to blunt force injuries to the head, along with violent shaking. There was a series of bruises to the forehead, nose, and perineum; blunt-force injuries to the chest and abdomen; retinal hemorrhages; contusions on both cheeks; a ruptured stomach; a fracture of the skull; and extensive hemorrhaging and injuries to the brain. The medical examiner also testified that the child would have lost consciousness within minutes or an hour from the time the fatal blow was inflicted and that "there's just no way that this happened as the result of a fall in the shower," or as the result of any other type of fall. And he opined that the child may have survived had he received prompt medical attention. Appellant offered medical testimony that many of the bruises were between two and seven days old.

1. The evidence showed that appellant was actively involved in a pattern of mistreatment which led to the child's death, and that she knowingly and callously deprived the child of medical attention needed in order to survive. The evidence was sufficient to enable a rational trier of fact to find appellant guilty beyond a reasonable doubt of malice murder, or as a party to the crime of malice murder. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant contends that the trial court abused its discretion in refusing her requests for a severance and trying her jointly with her husband.

During trial both defendants renewed their pretrial motions for severance, on the ground that their defenses were becoming antagonistic. The State responded that neither party had made the requisite showing of prejudice, and the court agreed.[2]

---

[2] In a prosecution for a capital felony where the death penalty is waived, defendants may be tried jointly or separately, in the discretion of the trial court. OCGA § 17-8-4.

The defendant requesting a severance has the burden of making a clear showing of prejudice and a denial of due process in the absence of severance. [Cit.] Factors the trial court should consider in exercising its discretion include: (1) whether the number of defendants creates confusion of the evidence and law applicable to each defendant; (2) whether a danger exists that evidence admissible against one defendant will be considered against the other, despite cautionary instructions; and (3) whether the defenses are antagonistic. [Cit.]

*Wilkins v. State*, 266 Ga. 278, 279 (2) (466 SE2d 592) (1996). There was nothing confusing about the evidence in this case and nothing to create a danger that evidence against James would be considered against appellant. The mere fact that the defenses of co-defendants are antagonistic is not sufficient to mandate a severance. Appellant must also demonstrate harm by the failure to sever. *Dennard v. State*, 263 Ga. 453 (5) (435 SE2d 26) (1993).

Although appellant and her husband each presented vigorous defenses attempting to show that the other caused the fatal injuries, the State offered substantial evidence of a pattern of abuse and neglect on the part of both defendants. As in *Wilkins*, supra at (2) (b), the evidence offered by James implicating appellant was cumulative of the State's evidence against her. Because appellant has not made the requisite showing of harm, the trial court was not required to grant a severance. Id.; *Smith v. State*, 267 Ga. 372 (2) (477 SE2d 827) (1996); *Dennard*, supra; *Harrell v. State*, 253 Ga. 474 (2) (321 SE2d 739) (1984). Compare *Crawford v. State*, 148 Ga. App. 523 (251 SE2d 602) (1978) (a severance was authorized where there was overwhelming evidence against two co-defendants, including confessions by both, and only slight evidence against appellant).

3. Appellant submitted a written request to charge cruelty to children as a lesser included offense of murder. Although the court charged the elements of cruelty to children as the felony underlying the felony murder charge, it refused to charge the jury that they could return a verdict of cruelty to children as a lesser included offense. Under the rule of *Edwards v. State*, 264 Ga. 131 (442 SE2d 444) (1994), a requested charge on a lesser included offense must be given where the case contains some evidence, even slight, that the defendant committed the lesser offense. The indictment charged appellant with felony murder, with the underlying felony of cruelty to children by shaking and beating the victim, and by failing to seek proper medical attention after the injuries were inflicted. There was substantial evidence that appellant had caused the child cruel or excessive physical pain by numerous instances of vigorous shaking,

and had deprived the child of needed medical treatment to the extent that his health or well-being was jeopardized. From this evidence the jury could have concluded that the earlier injuries resulted in cruel or excessive physical pain, but did not cause the child's death. Accordingly, a charge on cruelty to children in the first degree (OCGA § 16-5-70), as a lesser offense to felony murder, was required under *Edwards*.

But, unlike *Edwards*, the jury found appellant guilty of the greater offense of malice murder. Therefore, the error in failing to charge on cruelty to children would have been harmful only if that crime was an included offense in the charge of malice murder. In order for cruelty to children to be an included offense in the crime of malice murder, the allegations of the malice murder count must contain all of the essential elements of the offense of cruelty to children. See *Washington v. State*, 190 Ga. App. 143, 144 (378 SE2d 381) (1989). The offense of cruelty to children, as defined in OCGA § 16-5-70, requires proof that the victim is under the age of 18. In contrast, malice murder, as defined in OCGA § 16-5-1 (a), requires only proof that the defendant "causes the death of another human being." Thus, the age of the victim is an essential element of the offense of cruelty to children, but is not essential to the offense of malice murder. The malice murder count of the indictment charged that appellant caused the death of a human being of unspecified age. Because the malice murder count did not include all of the essential elements of the offense of cruelty to children, the latter was not an included offense of malice murder, and a conviction for cruelty to children would not have been authorized. *McCartney v. State*, 262 Ga. 156 (5) (414 SE2d 227) (1992); *McCrary v. State*, 252 Ga. 521, 524 (314 SE2d 662) (1984). It follows that the court did not err in refusing to give the requested charge as an included offense of malice murder. See *Henry v. State*, 265 Ga. 732, 737 (6) (462 SE2d 737) (1995).

While a conviction for cruelty to children may have been authorized as an included offense of felony murder, because appellant was convicted of malice murder, the erroneous failure to charge cruelty to children as an included offense of felony murder was harmless. See generally *Tucker v. State*, 225 Ga. App. 757 (484 SE2d 793) (1997) (conviction of the greater offense renders harmless any error in the charge as given for the lesser included offense).

4. The court did not err in refusing requests to charge on misdemeanor involuntary manslaughter under OCGA § 16-5-3 (a), and the parental obligation to provide for the maintenance, protection and education of a minor child under OCGA § 19-7-2.

A person commits misdemeanor involuntary manslaughter under OCGA § 16-5-3 (a) "in the commission of an unlawful act when he causes the death of another human being without any intention to

do so by the commission of an unlawful act other than a felony." OCGA § 19-7-2 would have been applicable as the underlying unlawful act if death had occurred as a result of a negligent omission to act. See generally *Estes v. State*, 251 Ga. 347 (2) (305 SE2d 778) (1983). There was substantial evidence that appellant *intentionally* mistreated the child and acted to conceal his condition, and an absence of evidence of a *negligent* omission as would trigger OCGA § 19-7-2. The court did not err in refusing to give the requested charge. *Edwards*, supra.

*Judgment affirmed. All the Justices concur, except Fletcher, P. J., and Sears, J., who dissent.*

FLETCHER, Presiding Justice, dissenting.

I dissent because I cannot accept the majority's conclusion in Division 3 that the error in failing to instruct on cruelty to children as a lesser included offense of felony murder was harmless because it is not a lesser included offense of malice murder. It is true that the statutory elements of cruelty to children include a requirement that the victim be under 18 and the elements of malice murder contain no such requirement. It defies logic, however, to say that the state could have proved malice murder of a four-month-old baby without necessarily proving cruelty to children. Only by ignoring the facts in this case and focusing on statutory elements alone can the majority conclude that the error in failing to give a lesser included offense charge was harmless.

The rationale behind allowing a defendant to request an instruction on a lesser included offense is the understanding that a jury is likely to resolve any doubts in favor of conviction when the defendant has clearly done something wrong, but the jury's only other option is acquittal.[3] In this case, the evidence showed that Loren either participated in or had knowledge of the abuse of her son that occurred prior to the infliction of the fatal injury. The evidence, however, was conflicting as to who delivered the fatal blows and was not so overwhelming as to demand a conviction for malice murder or felony murder. Yet, the trial court instructed the jury that Loren was either guilty of murder or would have to be acquitted.

Because the evidence showed that Loren did something wrong, but not necessarily murder, and because the jury was given only two options, murder or acquit, I do not find the error in failing to charge on cruelty to children harmless.

I am authorized to state that Justice Sears joins in this dissent.

---

[3] See *Keeble v. United States*, 412 U. S. 205 (93 SC 1993, 1998, 36 LE2d 844) (1973) ("where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction").

SEARS, Justice dissenting.

I respectfully join Presiding Justice Fletcher's dissent. Furthermore, I cannot agree with the majority's analysis that simply because Loren, a 15-year-old girl raised in deplorable conditions and herself the victim of mistreatment and molestation, was convicted on the malice murder count, any charging error associated with the felony murder count is rendered harmless. When faced with separate murder counts regarding the same death, I believe it is unwise for the court to make distinctions based upon technical legal niceties that cannot also be made by jurors unschooled in the law's complexities.

DECIDED DECEMBER 3, 1997 —
RECONSIDERATION DENIED DECEMBER 19, 1997.

*Sam B. Sibley, Jr.,* for appellant.

*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney, Thurbert E. Baker, Attorney General, Mary Beth Westmoreland, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General,* for appellee.

