## S98A1195. PARKER v. THE STATE.
### (507 SE2d 744)

BENHAM, Chief Justice.

This appeal is from Michael Lee Parker's convictions of malice murder, felony murder, and cruelty to children.[1] The evidence presented at trial by the State showed that Karen Martin and her son Zachary were residing with Parker in January 1995. Martin testified that Parker and Zachary were gone when she awoke on January 27. Parker called her in the afternoon and asked her to go to a grocery store, which she did. On her return, she noticed that the carpet she had vacuumed before her departure had footprints on it. As she brought in groceries, Parker arrived carrying Zachary, who was already dressed in pajamas and appeared to be asleep. Parker took Zachary upstairs, apparently to put him to bed. According to Martin, Parker then behaved nervously, eating and drinking less than usual and going to bed early. She discovered a load of laundry in the washing machine containing one of Zachary's outfits and Parker's work clothes, which was unusual because she usually did the laundry. Martin testified that she went to bed between 4:00 and 4:30 a.m., woke once around noon to ask Parker whether he had heard Zachary that day, went back to sleep when Parker said he had heard Zachary, then woke at midafternoon. When she checked on Zachary at that time, she found him stiff and cold in his bed. She testified that Parker made her wait to call 911 until he got some marijuana out of the apartment and told her to say that he had fallen on the stairs

---

[1] The crimes were committed on January 27, 1995, and Parker was indicted for malice murder, felony murder (cruelty to children), and cruelty to children on March 21, 1996. At a trial conducted February 24-28, 1997, Parker was convicted of all charges. The trial court sentenced Parker to life imprisonment for malice murder, and ruled that the other two offenses merged into that conviction. Parker's motion for new trial, filed March 18, 1997, and amended December 12, 1997, was denied on December 29, 1997. A notice of appeal filed January 20, 1998, directed this appeal to the Court of Appeals where the appeal was docketed on April 15, 1998. The Court of Appeals transferred the appeal to this Court by an order dated April 16, 1998. The appeal was docketed in this Court on April 22, 1998, and was submitted for decision after oral argument on July 20, 1998.

while carrying Zachary. Two days later, Parker told her that Zachary had fallen off the seat of Parker's van as Parker drove around a curve, and that Parker intended to take Zachary to a hospital, but realized he was dead. Over the course of three days of interviews by police officers, Parker gave a variety of explanations for the many bruises found on Zachary, adding to the story each time police officers said his explanation did not match the child's injuries. Among the explanations were statements that, over the course of about two weeks, the child had fallen, Parker had accidentally bumped the child against walls and a ceiling fan, the child sometimes banged his head on the floor if he did not get his way, and the child had fallen in the van when Parker hit the brakes or when he hit a pole with the van. State's witnesses who had examined the van testified there was no damage to it consistent with the alleged collision with a pole. During interviews subsequent to her first, in which she claimed she was with the child all day on the 27th, Martin said that Parker had told her the child died in his vehicle on the way to the hospital after falling off the van seat. A medical examiner testified to a number of serious head injuries suffered by the child, injuries which would have rendered the child immediately unable to function normally. The witness specifically opined that the injuries were not consistent with any of the explanations Parker had given to the police. Parker testified at trial that he had not taken the child out of the house on the 27th, that Martin had been with the child all day, and that he had fallen while carrying the child upstairs to put him to bed. The jury found Parker guilty of malice murder, felony murder, and cruelty to children.

1. In three enumerations of error, Parker has challenged the sufficiency of the evidence to uphold his convictions. The evidence presented at trial and summarized above was sufficient to authorize a rational trier of fact to find Parker guilty beyond a reasonable doubt of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Wilkins v. State*, 267 Ga. 86 (1) (475 SE2d 607) (1996).

However, we note for the edification of the bench and bar that the trial court's judgment sentencing Parker only for malice murder and ruling that the other offenses merged into malice murder is incomplete. While the conviction for felony murder stands vacated by operation of OCGA § 16-1-7 (*Malcolm v. State*, 263 Ga. 369 (5) (434 SE2d 479) (1993)), the conviction for cruelty to children did not merge, as the trial court ruled it did, into the conviction for malice murder. Because of the presence of the element of the victim's age in the crime of cruelty to children, that offense is not an offense included in malice murder (*Loren v. State*, 268 Ga. 792 (3) (493 SE2d 175) (1997)), and did not merge into it as a matter of fact under the

allegations of the indictment in this case. *McCartney v. State*, 262 Ga. 156 (5) (414 SE2d 227) (1992). Thus, the trial court's judgment is incomplete in that it leaves Parker unsentenced for a crime of which he has been convicted.

2. Parker requested a jury charge on the principle that mere presence at the scene of the crime is insufficient to support a conviction, and now enumerates as error the trial court's refusal to give that charge. The rule that mere presence at the scene of a crime is insufficient to convict is actually a corollary to the requirement that the State prove each element of the offense charged. *Muhammad v. State*, 243 Ga. 404 (1) (254 SE2d 356) (1979). In the present case, the trial court correctly instructed the jury on the duty of the State to prove each element of the crime beyond a reasonable doubt and instructed the jury fully on the law of circumstantial evidence. Under those circumstances, there was no error in the refusal to give Parker's requested charge. Id.

3. Parker also enumerates as error the trial court's refusal to give his requested charge that the jurors are judges of both the law and the facts. The trial court charged on the subject of Parker's request in the language of the suggested pattern jury instruction promulgated by the Council of Superior Court Judges:

> Members of the jury, it is my duty and responsibility to ascertain the law applicable to this case and to instruct you on that law, by which you are bound. It is your responsibility to ascertain the facts of the case from all the evidence presented. It then becomes your duty and responsibility to apply the law I give you in the charge to the facts as you find them to be.

Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (2nd ed. 1991), p. 9. That charge is a correct statement of the law: "Jurors have a duty to take the law from the trial court's instructions and apply it to the facts which they determine from the evidence adduced at trial. *Harris v. State*, 190 Ga. 258 (6) (9 SE2d 183) (1940)." *State v. Freeman*, 264 Ga. 276, 277 (444 SE2d 80) (1994).

> "It is not reversible error to fail to charge in the exact language requested when the charge given adequately covers the correct legal principles. [Cits.]" [Cit.] "It has long been held that under a proper interpretation of OCGA § 17-9-2, 'it is the province of the court to construe the law applicable in the trial of a criminal case, and of the jury to apply the law so construed to the facts in evidence. While the impaneled jurors are made absolutely and exclusively judges of the

facts in the case, they are, in this sense only, judges of the law.' The court is responsible for the correct exposition of the law and 'in the trial of criminal cases it is the duty of the jury to take the law from the court, as it is their duty to take the evidence from the witnesses.'" [Cits.] Inasmuch as the instruction given by the trial court was a 'proper interpretation' of the statutory basis of appellant's requested charge, it was not error for the trial court to fail to charge the legal concept now at issue in the language requested by appellant.

*McGee v. State*, 172 Ga. App. 208 (1) (322 SE2d 500) (1984).

4. Parker contends the trial court erred by charging the jury, at the State's request, that a reckless disregard for human life may be equivalent to a specific intent to kill. Parker argues that the charge could have improperly led the jury to convict him solely on the basis of criminal negligence. In *Dunagan v. State*, 269 Ga. 590 (2) (502 SE2d 726) (1998), we held that it was error to instruct the jury that criminal negligence could substitute for criminal intent as an element of the crime of aggravated assault. However, *Dunagan* is not controlling authority for the proposition that a reckless disregard for human life cannot substitute for the specific intent to kill as an element of the crime of malice murder. The elements of malice murder are entirely different from those of aggravated assault.

The crime of malice murder is committed when a person unlawfully causes the death of another human being while acting with express or implied malice. OCGA § 16-5-1 (a). In this definition of the crime, the concept of malice incorporates the intent to kill. *Latimore v. State*, 262 Ga. 448, 450 (421 SE2d 281) (1992); *Patterson v. State*, 239 Ga. 409, 416 (4) (b) (238 SE2d 2) (1977), overruled on other grounds, *Bradham v. State*, 243 Ga. 638, 640 (3) (256 SE2d 331) (1979). Thus, in Georgia, the crime of malice murder is committed when the evidence shows either an express or, in the alternative, an implied intent to commit an unlawful homicide. This meaning of malice murder is consistent with the general rule that crimes which are "defined so as to require that the defendant intentionally cause a forbidden bad result are usually interpreted to cover one who knows that his conduct is *substantially certain* to cause the result, whether or not he desires the result to occur." (Emphasis in original.) 1 LaFave and Scott, Substantive Crim. Law, § 3.7 (f), p. 336 (1986). Thus, a malice murder can be shown not only by evidence that the defendant acted with the "deliberate intention unlawfully to take the life of another human being which is manifested by external circumstances capable of proof," but also by evidence that the defendant acted "where no considerable provocation appears and where all the circumstances of the killing show an abandoned and malignant

heart." OCGA § 16-5-1 (b). In other words, evidence that the defendant acted with implied malice is, for purposes of demonstrating his guilt of the crime of malice murder, no less probative than proof that he acted with a specific intent to kill.

This Court has recognized that "implied malice," as employed in OCGA § 16-5-1 (b), is "a term which has been defined to mean conduct exhibiting a 'reckless disregard for human life.' [Cits.]" *Merrow v. Hawkins*, 266 Ga. 390, 392 (2) (467 SE2d 336) (1996). See also *Thomas v. State*, 268 Ga. 135, 141 (16) (485 SE2d 783) (1997); *Flynn v. State*, 255 Ga. 415, 417 (2) (c) (339 SE2d 259) (1986); *House v. State*, 252 Ga. 409, 412 (3) (c) (314 SE2d 195) (1984); *Lackey v. State*, 246 Ga. 331, 337 (11) (271 SE2d 478) (1980); *Hardy v. State*, 242 Ga. 702, 705 (4) (a) (251 SE2d 289) (1978). There is language to the contrary in *Foster v. State*, 239 Ga. 302 (236 SE2d 644) (1977). However, that language, which appears to be mere dicta under the circumstances of the case, is not supported by the citation of any authority. More importantly, the questionable language in *Foster* is in conflict with the subsequent unambiguous holdings of the above-cited cases wherein implied malice, for purposes of malice murder, is defined as conduct which exhibits a reckless disregard for human life. Therefore, to the extent that *Foster* ever had any viability as authority for a contrary definition of implied malice, it clearly is no longer support for that proposition. Under *Hall v. Hopper*, 234 Ga. 625, 629 (3) (216 SE2d 839) (1975), the definition of implied malice adopted in *Merrow* and the other cases decided subsequent to *Foster* is controlling. This controlling definition follows the general rule that

> [e]xtremely negligent conduct, which creates what a reasonable man would realize to be not only an unjustifiable but also a very high degree of risk of death or serious bodily injury to another or to others — though unaccompanied by any intent to kill or do serious bodily injury — and which actually causes the death of another, may constitute murder.

2 LaFave and Scott, Substantive Crim. Law, § 7.4, pp. 199-200 (1986). If a reckless disregard for human life constitutes implied malice and implied malice is, in turn, the equivalent of a specific intent to kill, then it necessarily follows that reckless disregard for human life may be the equivalent of a specific intent to kill. *Tiller v. State*, 267 Ga. 888 (1) (485 SE2d 720) (1997); *Bishop v. State*, 257 Ga. 136, 138 (1) (356 SE2d 503) (1987); *Walden v. State*, 251 Ga. 505, 507 (2) (307 SE2d 474) (1983). Evidence that the defendant acted in reckless disregard for human life is, for purposes of demonstrating his guilt of the crime of malice murder, as equally probative as evidence that he acted with a specific intent to kill.

Contrary to Parker's argument, the contested charge does not authorize a malice murder conviction based upon proof that the defendant caused the death of another through any and all acts of criminal negligence. The instruction is couched in specific terms of a reckless disregard for human life, and not in general terms of criminal negligence, and it has long been recognized that such life-endangering acts of recklessness can constitute the implied malice sufficient to authorize a conviction for malice murder. For purposes of malice murder, criminal negligence constitutes implied malice only when it is capable of producing violence resulting in the destruction of human life. See *Bishop v. State*, supra at 138. Thus, the charge does not erroneously equate general criminal negligence with a specific intent to kill, but it does properly equate implied malice with that intent. Consistent with the applicable long-standing authority in the area of malice murder, this instruction that a reckless disregard for human life may be equivalent to a specific intent to kill is a correct statement of the law and was properly given.

*Judgment affirmed. All the Justices concur, except Fletcher, P. J., Sears and Hunstein, JJ., who concur specially.*

HUNSTEIN, Justice, concurring specially.

The jury in the charge discussed in Division 4 was instructed that a reckless disregard for human life "may be equivalent to" a specific intent to kill. Because I believe this charge misleads juries into believing that malice murder can be committed by criminal negligence, I disagree with the majority's opinion that the instruction was correct.

Malice is the intent to kill without provocation or justification. *Marshall v. State*, 59 Ga. 154 (1877). Clearly, malice may be inferred from circumstances which demonstrate a reckless disregard for human life, *House v. State*, 252 Ga. 409 (3) (c) (314 SE2d 195) (1984), since malice is a state of mind which must often be proven indirectly. *Davis v. State*, 237 Ga. 279 (2) (227 SE2d 249) (1976).[2] However, the charge given by the trial court in this case did not inform the jury that they might *infer* intent to kill from reckless behavior nor did it instruct them that they may consider reckless behavior as indirect proof to determine whether a defendant's state of mind constituted malice aforethought. Rather, the challenged instruction directed the jury that reckless behavior could substitute for the intent to kill. From this charge a jury could reasonably believe that they need not find malice at all if there was evidence of criminal negligence to take

---

[2] Thus, I agree completely with the language the majority cites from Professors LaFave and Scott that extremely negligent conduct may constitute malice murder since that language is consonant with the above-cited Georgia law.

its place. Consistent with this Court's recent holding that it was error to charge the jury that criminal negligence can substitute for the intent to commit an aggravated assault, *Dunagan v. State*, 269 Ga. 590 (502 SE2d 726) (1998), I would hold that it was error here to charge the jury that reckless behavior could substitute for the intent to kill to support a murder conviction.

The majority can cite to case law extending back over 100 years, with opinion after opinion reiterating the proposition that reckless disregard of human life is the equivalent to a specific intent to kill. This court-created "equivalency" concept has its roots deep in 19th Century Georgia law and is unavoidably intertwined with the Georgia Penal Code, which was repealed in 1968. Ga. L. 1968, p. 1249, § 1. Without delving too deeply into Georgia's tangled legal history, a topic which can be tediously arcane, it is important to understand that creation of the equivalency concept was necessary in order to provide the element of malice to uphold murder convictions for a type of homicide which required no intent to kill. Ga. L. 1833, p. 143, Penal Code § 9, p. 148. Because a person who did not have the intent to kill but who did commit a reckless act resulting in a death committed murder under this statute, and because there could be no murder without the intent to kill, the equivalency concept authorized the commission of a reckless act resulting in a death to substitute for the intent to kill essential to prove malice. See *Wright v. State*, 166 Ga. 1, 3 (141 SE 903) (1928). While there are cases rendered after the repeal of the Penal Code which reiterate the equivalency concept, those cases are relying upon a concept dependent on and inseparable from an abolished statute.

No statutory basis remains for maintaining a concept which equates reckless behavior with malice. Under felony murder, the modern counterpart to the repealed unintentional murder statute, the proof of malice which had been so essential to the earlier statute is now expressly irrelevant. OCGA § 16-5-1 (c) (offense occurs when, in commission of a felony, person "causes the death of another human being, *irrespective of malice*." (Emphasis supplied.)) There is nothing in the malice murder statute that supports the proposition that reckless behavior is the equivalent of an intent to kill: the statute defines the offense of murder in terms of malice, not criminal negligence. OCGA § 16-5-1 (a), (b). The only case law supporting this proposition is based exclusively on obsolete, discarded law. There is not even stare decisis to fall back upon: a review of the cases cited by the majority reveals that most of them rely directly or indirectly on *Myrick v. State*, 199 Ga. 244 (34 SE2d 36) (1945), even though *Myrick* was specifically named as one of the cases disapproved by this Court in *Dunagan*, supra, in which we held that murder cases which set forth the equivalency concept and the authority on which they rely

"are based on a form of homicide abolished by the Legislature in 1968 and thus those holdings are inapplicable now." Id. at 593.

The cases cited by the majority demonstrate how the appellate courts have mixed up and intermingled the equivalency concept with the correct principle that malice may be inferred from reckless behavior. See, e.g., *Lackey v. State*, 246 Ga. 331 (11) (271 SE2d 478) (1980) (stating both the correct principle and the equivalency concept); *Flynn v. State*, 255 Ga. 415 (2) (c) (339 SE2d 259) (1986) (stating the correct principle but citing as authority opinion which quotes the equivalency concept and relies upon *Myrick*). However, I am less concerned about confusion in the Court than with confusion in the jury room. The difference between instructing a jury that a presumption of malice may arise from reckless conduct and instructing them that reckless conduct and malice are equivalents that can substitute for one another is not just a matter of mere semantics. A jury is entitled to be instructed how to determine a defendant's state of mind based on the evidence adduced; it is not entitled to be instructed that a lesser mental culpability may be substituted for the required higher mental culpability. A jury hearing the charge upheld by the majority in Division 4 that a reckless disregard for human life may be the equivalent of a specific intent to kill will not understand this charge to mean that they may infer malice from evidence of reckless behavior: instead, they will understand that they are authorized to substitute criminal negligence for malice.

The harm posed by jury charges which "substitute" criminal negligence for intent was recognized and correctly condemned by this Court in *Dunagan*. That harm is present in this malice murder case. Given the misinformation the charge in issue here provides to jurors and the seriousness of the penalty involved for a murder conviction, it behooves this Court to condemn a charge which instructs a jury that it can substitute criminal negligence for the malice required to convict under OCGA § 16-5-1 (a). Accordingly, I would conclude that the trial court in this case erred by charging the jury that reckless behavior may be the equivalent of an intent to kill. However, in light of the charge as a whole and considering that the evidence adduced by the State, albeit circumstantial, was overwhelming, I would find there is no reasonable possibility that the jury could have returned a different verdict had the challenged charge not been given. *Roberts v. State*, 267 Ga. 669 (10) (d) (482 SE2d 245) (1997). See also *Johnson v. State*, 238 Ga. 59 (230 SE2d 869) (1976). Thus, I concur in judgment only.

I am authorized to state that Presiding Justice Fletcher and Justice Sears join in this special concurrence.

HINES, Justice, concurring.

I write separately because I disagree with the statements in Division 1 that the trial court erred in ruling that the conviction for cruelty to children merged into the conviction for malice murder for the purpose of sentencing. *McCartney v. State*, 262 Ga. 156, 160 (5) (414 SE2d 227) (1992), cited in the opinion, involved evidence of childhood maltreatment syndrome or abused child syndrome, and does not stand for the proposition that the offense of cruelty to children can never be included as a matter of fact in the crime of malice murder. Here, in accord with *Malcolm v. State*, 263 Ga. 369, 372 (5) (434 SE2d 479) (1993), the trial court made the finding that the underlying felony did merge as a matter of fact into the malice murder count, and the correctness of that factual determination is not at issue in the appeal.

I am authorized to state that Presiding Justice Fletcher joins in this concurrence.

DECIDED NOVEMBER 23, 1998.

*Lee Sexton & Associates, Lee Sexton,* for appellant.

*Robert E. Keller, District Attorney, Verda Andrews-Stroud, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General,* for appellee.